UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD A. BUTLER, III, AND | ) | Case No. 4:14CV2380 |
| OCEAN AVENUE PROPERTIES, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | [Resolving Docs. 3; 14; 23; 25.] |
| HOTEL CALIFORNIA, INC. AND | ) | |
| SEBASTIAN RUCCI, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |

This matter comes before the Court upon the Joint Motion for a Temporary Restraining Order and Preliminary Injunctive Relief of Plaintiffs Richard A. Butler, III and Ocean Avenue Properties, LLC.  Defendants Sebastian Rucci and Hotel California, Inc., have opposed Plaintiffs' Motion.  A hearing has been held.  For the reasons set forth herein, Plaintiff's motion for a temporary restraining order and preliminary injunctive relief is **DENIED**.

I.     Facts

The basic facts relative to Plaintiffs' request for preliminary injunction are largely undisputed.  Plaintiff Richard A. Butler is the owner and operator of Ocean Avenue Properties, which owns and operates a hotel in Santa Monica, California, named The Hotel California. When Mr. Butler originally acquired the Santa Monica property he filed an application with the United States Patent and Trademark Office (PTO) seeking to register "Hotel California" as a service mark for "providing temporary furnished accommodations." (Complaint, para. 13.)  The service mark was subsequently included in the Supplemental Register on July 8, 1997.  (Doc #1-4.)  Plaintiff then sought, and received, registration of "The Hotel California" for use with

1

"Hotel, motel and furnished lodging services;" this second mark was included in the Principal Register on April 6, 2004.  (Complaint, para 15.)  The original mark for "Hotel California" remains on the Supplemental Register.  Plaintiff has continually operated "The Hotel California" in Santa Monica, California.  Plaintiffs have continually used and promoted the service mark "The Hotel California," in print and online, in connection with this business.  The extent of the Plaintiffs' use of "Hotel California" is unclear, as the Plaintiffs' website and references to travel reviews use "The Hotel California" not "Hotel California."  Plaintiffs state that franchise and licensed operations of the brand have begun and identify one other location in California, San Francisco.  However Plaintiff has not produced any document or material demonstrating a connection with the San Francisco property or conclusively identified any hotel other than the Santa Monica location that is owned, run, or licensed by Ocean Avenue Properties, LLC, or Richard A. Butler III.

Defendants Sebastian Rucci and Hotel California, Inc., have begun the process of developing a hotel and restaurant in Austintown, Ohio, under the names "Hotel California." and "Santa Monica Grille" (Complaint, para 5.)  Defendants have purchased a domain name www.hotel-cali.com and prepared a Facebook page for "Hotel cali."  (Complaint, para 25.)  The parties collectively state that they were independently inspired by the Eagles' release of a song by the same name.[1]  Defendant Rucci incorporated "Hotel California, Inc." in July 2012 with the Ohio Secretary of State for the purpose of operating a hotel, restaurant, and conference room in Austintown, OH.  Defendants state that they were unaware of The Hotel California in Santa Monica, chose the name due to the Eagles' song, and intended to position the Austintown

---

[1] The song in question was released in 1976 on the album of the same name.  Hotel California was not, as Plaintiffs represent, released in 1972 on the album *Desperado*, which, incidentally, was released in 1973.

property to capitalize on the opportunity created by the new Hollywood Racino at Mahoning Valley Racecourse in Youngstown, Ohio.

Plaintiffs state that they learned of the proposed Austintown hotel in July 2014 and sent a first cease and desist letter to Defendants on July 14, 2014.  Defendants did not respond to this letter or a subsequent letter sent on October 8, 2014.  Both letters were sent to the address provided by Defendants for service of process in the business registration filed with the State of Ohio.  In September 2014 Defendants sought and received registration of the service mark Hotel California from the State of Ohio.  Plaintiffs have filed suit asserting an exclusive right to "The Hotel California" and "Hotel California" for hotel and lodging services nationwide.  Plaintiffs allege Defendants have engaged in trademark infringement, counterfeiting, and unfair competition in violation of the Lanham Act as well as violations of the Ohio Deceptive Trade Practices Act.

## II.    Legal Standard

When considering a motion for preliminary injunctive relief, courts must balance:  (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.  *PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 249 (6th Cir.2003).  "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met."  *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) (citing *in re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985).  A district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.  *Id.;*

citing *Mascio v. Public Employees Retirement Sys. of Ohio*, 160 F.3d 310, 312 (6th Cir.1998)

(affirming the district court's grant of a preliminary injunction based on the district court's

conclusion that the plaintiff had demonstrated a substantial likelihood of success on the merits).

It is nevertheless "generally useful for the district court to analyze all four of the preliminary

injunction factors." *Certified restoration Dry Cleaning v. Tenke Corp.*, 511 F.3d 535, 542 (6th

Cir. 2007) (internal citation omitted).  A district court's evaluation of the preliminary question of

whether a movant is likely to succeed on the merits is a question of law subject to de novo

review. *N.A.A.C.P. v. City of Mansfield*, 866 F.2d 162, 169 (6th Cir.1989).  The weight a district

court's gives to each of the four factors and resulting decision to grant or deny preliminary

injunctive relief, however, is examined under the abuse of discretion standard.  *PACCAR*, 319

F.3d at 249; *N.A.A.C.P.*, 866 F.2d at 166 (noting that a "district judge's weighing and balancing

of the equities should be disturbed on appeal only in the rarest of cases") (internal quotation

marks and citations omitted). A district court has abused its discretion if it has "relied upon

clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous

legal standard."  *PACCAR*, 319 F.3d at 249 (internal quotation marks and citation omitted).

## III.    Legal Analysis

### A.  Likelihood of Success

To establish a likelihood of success on the merits of a claim, Plaintiffs must:

> . . . show more than a mere possibility of success.  However, it is ordinarily sufficient
> if the plaintiff has raised questions going to the merits so serious, substantial, difficult
> and doubtful as to make them for litigation and thus for more deliberate investigation.

*Six Clinics Holding Corp. v. Cafcomp Sys., Inc.,* 119 F.3d 393, 402 (6th Cir.1997) (internal

citations omitted).  As Plaintiffs note, to sustain a claim for trademark infringement, they must

demonstrate (1) ownership of a valid mark that is entitled to protection under the Lanham Act;

4

and (2) that the Defendants' use of the mark is likely to cause consumer confusion.  *U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1188-89 (6th Cir. 1997).  With regard to ownership, Defendants do not dispute that Plaintiffs have registered "The Hotel California" in the Principal Register and "Hotel California" in the Supplemental Register.  Clearly, if Defendants sought to use "The Hotel California," Plaintiffs would be entitled to the full presumption of exclusivity conferred by the Principal Register listing for "hotel, motel and furnished lodging services in class 42."  *Allard Enterprises, Inc. v. Advanced Programming Resources Inc.,* 249 F.3d 564, 572 (6th Cir. 2001), citing 15 U.S.C. §§ 1057 (b) and 1115 (a), and U.S.P.T.O Reg. No. 2,828,786.  Defendants have instead elected to use Hotel California, which Plaintiffs hold a Supplemental Registration for use in connection with "providing temporary furnished accommodations, in class 42."  (PTO Reg. No. 2,078,227.)

The significance of a registration in the Supplemental Register is not equally conclusive.

The Sixth Circuit explains:

> Designations that have not yet acquired a trademark significance but are capable of doing so may be registered on the Supplemental Register, which was created by 15 U.S.C. § 1091.  3 McCarthy on Trademarks and Unfair Competition § 19:32 (4th ed.2013).  'A Supplemental Registration confers no substantive trademark rights beyond those under common law and section 26 of the Lanham Act expressly excludes Supplemental Registrations from certain advantages gained by registration on the Principal Register.' *Id.* § 19:36 (footnote omitted)

*Innovation Ventures v. N2G Distributing, Inc.*, 763 F.3d 524, fn. 2 (6th Cir. 2014).  15 U.S.C. § 1094 specifies:

> but applications for and registrations on the supplemental register shall not be subject to or receive the advantages of sections 1051(b), 1052(e), 1052 (f), 1057 (b), 1057 (c), 1062(a), 1063 to 1068 inclusive, 1072, 1115 1124 of this title.

The effects of these exclusions include the fact that Supplemental Registration does not establish the registrant's exclusive right to use the mark.  15 U.S.C. § 1057, which provides:

(b) Certificate as prima facie evidence
A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.

(c) Application to register mark considered constructive use
Contingent on the registration of a mark on the principal register provided by this chapter, the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect, on or in connection with the goods or services specified in the registration against any other person except for a person whose mark has not been abandoned and who, prior to such filing—

Thus, Supplemental Registration is not prima facie evidence of the existence, validity, or exclusive right to a mark, even after a period of years, no presumption arises unless the mark is successfully moved to the Principal Register.  15 U.S.C. § 1052(f), 3 McCarthy on Trademarks and Unfair Competition § 9.36 (citing, as examples: *McCormick & Co. v. Summers*, 354 F.2d 668, 674 (C.C.P.A. 1966), "It must be remembered that registrations on the Supplemental Register do not receive the advantages of section 7(b) with regard to prima facie evidence of exclusive right to use"; *George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 391 n.8, 91 U.S.P.Q.2d 1786 (4th Cir. 2009): "unlike principal registration, supplemental registration is not prima facie evidence of the validity of the registered mark, of ownership of the mark, or of the registrant's exclusive right to use the registered mark in commerce"; and *ERBE Elektromedizin GmbH v. Canady Technology LLC*, 629 F.3d 1278, 1288, 97 U.S.P.Q.2d 1048 (Fed. Cir. 2010) registrant of the mark on the Supplemental Register bears the burden of proof to establish the existence of a valid mark).  Finally, it appears that the primary benefit of registration on the Supplemental Register is the speculative deterrence it might provide a party investigating the commercial viability of a mark and the fact that a Supplemental Registration

6

may be cited by an examiner against a subsequent application for registration on the Principal Register.  *Application of Clorox Co.*, 578 F.2d 305, 308 (C.C.P.A. 1978).

For these reasons Plaintiffs reference to the Supplemental Registration of "Hotel California" is insufficient to establish ownership of a protectable mark.  Nevertheless, the fact of the mark's inclusion in the Supplemental Register is, as the Sixth Circuit noted in *Innovation Ventures*, *supra* at 5, an indication that "Hotel California" is capable of acquiring trademark significance use.  Prior to the placement of a mark on the Principal Register, or obtaining trademark protection under State law, an entity seeking to enforce the right may have a common law right to the mark.  *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*, 249 F.3d 564, 58 U.S.P.Q.2d 1710 (6th Cir. 2001).  At common law, "ownership of trademark or service mark rights is obtained by actual use."  *Id.* at 571-571, citing 2 McCarthy on Trademarks and Unfair Competition § 16.1 (4th Ed. 2000).  Further, "[t]he first to use a mark in the sale of goods or services is the 'senior user' of the mark and gains common law rights to the mark in the geographic area in which the mark is used.  Ownership rights flow only from prior use-either actual or constructive."  *Id.* at 572.  The court continues:

> The U.S. Court of Customs and Patent Appeals has explicitly addressed 'the questions as to what circumstances, if any, short of actual use of the trademark, may create rights in a territory . . .'  *In re Beatrice Foods Co.*, 57 C.C.PA.1320, 429 F.2d 466, 475 (1970).  The court's answer relied on the underlying purpose of trademark law to eliminate consumer confusion.  The *Beatrice* court explained that, 'where a party has submitted evidence sufficient to prove a strong probability of future expansion of his trade into an area, that area would then become an area of likelihood of confusion if a registration covering it was granted to another party.'

*Id.* at 574.  At this juncture, Plaintiffs have not established the extent of their use of "Hotel California" as opposed to "The Hotel California."  Moreover, as Defendants indicated in opposition to the motion and during the hearing on the motion, there are a number of hotels

7

operating under the name "Hotel California" in California itself without any apparent affiliation with Plaintiffs.  Plaintiffs do not appear at this stage to have established a protected right to "Hotel California" in a geographic area that encompasses California, and the extension of a protected right to Ohio would be inconsistent with that fact.

To the extent that Plaintiffs have a protected right to "The Hotel California," Plaintiffs must establish that Defendants' use of "Hotel California" in Ohio would create a likelihood of confusion.  *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 1100, 1107 (6th Cir. 1982).  The Sixth Circuit has adopted eight factors relevant to the likelihood of confusion determination:

1. Strength of the plaintiff's mark;
2. Relatedness of the goods;
3. Similarity of the marks;
4. Evidence of actual confusion;
5. Marketing channels used;
6. Likely degree of purchaser care;
7. Defendant's intent in selecting the mark; and
8. Likelihood of expansion of the product lines

*Id.* at 648.  "These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely. They are also interrelated in effect. Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case." *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991).  While all of these factors are relevant, actual confusion is "obviously the most probative proof of the likelihood of confusion." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997).

Plaintiffs contend that the "The Hotel California" mark is strong due to the duration of registration and the success of the Eagles' song by the same name.  Neither of these facts addresses the inquiry prescribed by the Sixth Circuit when evaluating the strength of a mark:

The strength of a mark is a determination of the mark's distinctiveness and degree of recognition in the marketplace. "A mark is strong if it is highly distinctive, i.e., if the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of wide and intensive advertisement, or because of a combination of both."

*Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). The fact that Plaintiffs describe the mark as distinctive only in the context of the Eagles song is telling.  Plaintiffs have not produced any indication that "The Hotel California" as an actual hotel is uniquely or distinctively associated with the property in Santa Monica or even that potential hotel patrons are generally aware of a hotel by that name in the marketplace.  As Defendants demonstrated, the hotel is not the only property in the State of California to use "Hotel California" in association with hotel or residential services.  The actual strength of the mark cannot and should not be definitively determined at this stage in the matter; but the information provided in support of the motion for preliminary injunction does not support a conclusion that the mark is particularly strong in California, much less that its strength extends from California to Ohio.

With regard to the remaining *Frisch* factors, while it is true that Plaintiffs and Defendants both intend to operate hotels, and to a certain degree one hotel room is like any other, in this instance one property is in Santa Monica with walking access to a beach and the other overlooks an interstate highway in northeastern Ohio.  The fact that the properties are both hotels is not sufficient to support the conclusion that a customer seeking accommodation in costal California would be swayed or mistakenly register near Youngstown, Ohio due to the superficial relatedness of the service.  Similarly, Plaintiffs' assertion that hotel rooms are so inexpensive and readily available that a purchaser intending to travel to California might, due to a general lack of care, mistakenly book a room in Ohio is insupportable.  The two properties appear to offer services to differing clientele in distant, and distinct, geographic locations.

9

The fact that the properties are geographically distinct and cannot therefore offer comparable services is also relevant to the marketing channels used.  An evaluation of marketing channels "requires a court to consider the similarities or differences between the predominant customers of the parties' respective goods or services.  *Daddy's Junky Music, supra* at 285.  It seems clear that Plaintiffs' and Defendants' predominant customer differs substantially, Plaintiffs, by their own representation, are a family friendly vacation destination catering to vacationers looking for accommodations near the beach in Santa Monica, California.  Defendant envisions a more opportunistic clientele based on his proximity to a race course and casino combination in Youngstown, Ohio.  The geographic distance of the two locations suggest a fairly distinct consumer base and differing marketing channels.  Neither operation has indicated an intent to engage in national advertising at this time.  The fact that both parties intend to maintain an internet presence relative to their services does not negate the differences in their presumptive clientele for the purposes of this preliminary analysis.[2]  Plaintiff concedes that there is no evidence of actual confusion at this stage, and the Court acknowledges that the absence of actual confusion is not dispositive.  *Homeowners', supra.*

Regardless of what Defendants may have or should have known in September when applying to trademark "Hotel California" for use in Ohio, nothing in the presentation or marketing of the Austintown property suggests that Defendants chose the mark "with the intent of causing confusion" or that they engaged in "purposeful copying" that they believed "may divert some business from the senior user."  *Homeowners Grp., supra*  at 1111; *Daddy's Junky Music Stores, Inc., v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 286 (6th Cir. 1997).

---

[2] Plaintiffs specifically reference their website, www.hotelca.com, and Defendants website, www.hotel-cali.com, in their motion for injunction, it appears that neither party was able to purchase or use www.hotelcalifornia.com because it was already owned by an unaffiliated property in Palo Alto, California, and appears to have been copyrighted in 1996.

Finally, although Plaintiffs suggest both that they intend to expand and have already begun an expansion, they have produced nothing that indicates any actual affiliation with another property. Plaintiffs' website lists a single location, and the other properties in California that use "The Hotel California" or "Hotel California" do not reference the Santa Monica location, share a reservation system, or otherwise indicate franchise status.  Plaintiffs have not produced any material demonstrating the claimed relationship(s).

The totality of the material presented by Plaintiffs in support of their motion for preliminary injunction does not demonstrate a likelihood of success on the merits.  This question drives the Court's analysis of the need for a preliminary injunction, but the Court will briefly address the other factors as well.

**B.  Irreparable harm, harm to others, the public interest**

The Court is sensitive to Plaintiffs' concern that Defendant Rucci's personal and business history could reflect negatively on the good will and reputation associated with the Santa Monica Property.  Defendants have offered, and it seems appropriate under the circumstances, to include a disclaimer in Defendants' web based advertising stating that they are in no way affiliated with or endorsed by Ocean Avenue Properties, and "The Hotel California Santa Monica."  The Sixth Circuit has found disclaimers sufficient even where a trademark has broad national use, and the alleged infringer specifically intended to capitalize on the mark through misdials associated with national ad campaigns.  *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d  19, 39 U.S.P.Q.2D 1181 (6th Cir 1996).

In *Holiday Inn*, the Sixth Circuit reversed the grant of partial summary judgment to Holiday Inn and dissolved a permanent injunction, finding that "use of a protected mark or use of a misleading representation is a *prerequisite* to the finding of a Lanham Act violation" and that

despite  a prominent, multimedia, national ad campaign of "1-800-Holiday", and an incontestable mark, the defendant's decision to register an 800 number reflecting common misdials of the number 0 for O and 1 for the letter l specifically intending to offer a competing hotel booking service was permissible.  *Id.* at 626 (emphasis sic).  At the time Holiday Inn had been in operation under that name since 1952, had advertised extensively, owed, operated, and licensed approximately 1,300 locations and spent $30,000,000 annually on advertising.  The Circuit found dispositive the fact that 800 Reservations began each call with an explicit disclaimer and, although it exploited Holiday Inns' decision not to take the precaution of registering similar numbers, did not independently create confusion.[3]  While the creation of confusion may continue to be an issue in this matter, the fact that a disclaimer was found sufficient to protect an indisputably national trademark's reservation service from intentional exploitation by a dial alike places Plaintiffs' reputational concern in a broader context.  Evidence of the possibility of irreparable harm, or even harm, is not present in this matter to a degree necessitating a preliminary injunction.  Bearing in mind that even a "preliminary injunction is an extraordinary remedy never awarded as of right" and that "[i]ssuing a preliminary injunction based only on the a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy" the apparent strength of Plaintiffs' "The Hotel California" mark in California does not merit a finding that there is a genuine likelihood of confusion, harm resulting from, or public interest in, Defendants' use of

---

[3] "Hello.  You have misdialed and have not reach Holiday Inns or any of its affiliates.  You've called 800 Reservations America's fastest growing independent computerized reservation service One of our highly trained hotel reservation specialists will be with you momentarily to provide the Holiday Inns number or to assist you in finding the lowest rate at over 19,000 properties worldwide, including such hotel chains as Holiday Inns, Guest Quarters, Hampton Inn, Sheraton, Comfort Inn, and many more. If you are a member of a hotel's frequent guest program, have that number ready. Please stay on the line, assistance is just a moment away."  *Id.* at 621.

"Hotel California" in Ohio.  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 and 22 (2008).

**Conclusion**

For the foregoing reasons Plaintiffs' Motion for Preliminary Injunctive Relief (Doc. # 3) is DENIED.  Plaintiffs' Motion to Supplement their Motion for Temporary Restraining Order and Preliminary Injunctive Relief (Doc. # 14) is GRANTED.  Defendants' Motions for Leave to File a Response to Documents Filed Without Leave of Court (Docs. #23 and #25) are DENIED AS MOOT.  Defendants are ordered to include a disclaimer clarifying their status as separate from Plaintiffs individually, and collectively, as well as from The Hotel California in Santa Monica in all print, internet-based, and other advertising.  Defendant Rucci is further ordered to provide a valid and current address for service of process in his filings with the Ohio Secretary of State and on ECF.


IT IS SO ORDERED.

/s/ *John R. Adams*

John R. Adams
U.S. District Court Judge


Dated: March 30, 2015