1        UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF OHIO
2             EASTERN DIVISION

3   RICHARD A. BUTLER, III,
    ET AL.,
4
                Plaintiffs,        Case No. 4:14CV2380
5                                  Akron, Ohio
         vs.                       Wednesday, October 29, 2014
6                                  1:30 p.m.
    HOTEL CALIFORNIA, INC.,
7   ET AL.,

8           Defendants.

9
              TRANSCRIPT OF HEARING ON MOTION FOR
10             TEMPORARY RESTRAINING ORDER
           BEFORE THE HONORABLE JOHN R. ADAMS
11            UNITED STATES DISTRICT JUDGE

12  APPEARANCES:
    For the Plaintiffs:   Christopher John Carney
13                        Sharon A. Luarde
                          Brouse McDowell - Cleveland
14                        600 Superior Avenue, E, Suite 1600
                          Cleveland, Ohio 44114
15                        (216) 830-6830

16  For the Defendants:   James A. Vitullo
                          Attorney at Law
17                        5232 Nashua Drive
                          Austintown, Ohio 44515
18                        (330) 207-8571

19                        Sebastian Rucci
                          Attorney at Law
20                        5455 Clarkins Drive
                          Austintown, Ohio 44515
21                        (330) 720-0398

22  Court Reporter:       Caroline Mahnke, RMR, CRR
                          Federal Building & U.S. Courthouse
23                        2 South Main Street, Suite 568
                          Akron, Ohio 44308
24                        (330) 252-6021

25  Proceedings recorded by mechanical stenography; transcript
    produced by computer-aided transcription.

1          Wednesday, October 29, 2014

2              THE COURT:  For the record, the Court has before

3      it today Case Number 4:14CV2380.  The case is captioned

4      Richard A. Butler, III and Ocean Avenue Properties, LLC

5      versus Hotel California, Incorporated and Sebastian Rucci.

6          We're here today for a hearing with regard to the

7      plaintiff's motion for a temporary restraining order.

8              Counsel for the plaintiff, are you ready to proceed?

9              MS. LUARDE:  Yes, Your Honor.

10             THE COURT:  On behalf of the defendant?

11             MR. RUCCI:  Yes, Your Honor.

12             THE COURT:  Counsel, I'm not certain how you wish

13     to proceed.  I've read the papers and the filings that

14     relate to the motion for TRO.  I've also received today

15     shortly before noon, pursuant to my order, a response to the

16     motion.

17         So I'm not sure whether you wish to present any

18     evidence, whether you wish to argue.  It's entirely up to

19     you as to how you wish to proceed in support of your motion.

20             MS. LUARDE:  Your Honor, today we would like to

21     just proceed with some argument on the issue.

22             THE COURT:  All right.  You may.

23             MS. LUARDE:  Thank you, Your Honor.

24         Would you like me to stay here or --

25             THE COURT:  Well, as long as you're using the

1    microphone, if you're more comfortable with the papers and

2    things that you have in front of you, you can use the table

3    and you can remain seated if you have substantial amounts of

4    documents you want to refer to.

5              MS. LUARDE:  Thank you, Your Honor.

6              THE COURT:  It's actually entirely up to you as

7    to where you're more comfortable.  I'll give you some leeway

8    in that regard.

9              MS. LUARDE:  Thank you, Your Honor.

10         Your Honor, as you noted, I represent Richard Butler

11   as well as Ocean Avenue Properties, LLC.

12             THE COURT:  Is the green light on?

13             MS. LUARDE:  The green light is on.

14             THE COURT:  All right.  Then your microphone is

15   on.  Thank you.

16             MS. LUARDE:  And our clients have the

17   incontestable right to the trademarks Hotel California and

18   The Hotel California.  They've used these marks for over 17

19   years in building and developing a brand of hotels in

20   California.

21         In the process, they have built a solid reputation for

22   being a good hotel site.  They have received many favorable

23   reviews from various travel guides such as Frommer's,

24   Fodor's and the Times and others.

25             THE COURT:  This is one hotel?

1       MS. LUARDE:  Your Honor, actually there

2    are -- there is a hotel in San Francisco, a hotel in Santa

3    Monica, and they also license a hotel in Palo Alto,

4    California.

5           THE COURT:  So there are three?

6           MS. LUARDE:  That's correct, Your Honor.

7           THE COURT:  And not to interrupt your

8    presentation, there is an argument that's been made by the

9    defendant that your registration is a supplemental

10   registration, not a principal registration.

11        Does that make any difference?  What's the

12   distinction, if any?

13          MS. LUARDE:  Your Honor, in this instance it

14   makes no difference whatsoever.  The first registration may

15   in fact be a supplemental registration.  However, the second

16   registration is on the principal register.  And the word

17   "the" under trademark law has no significance and no meaning

18   whatsoever and doesn't change the validity or enforceability

19   of the trademark.

20          THE COURT:  So, first of all, you believe you

21   have a valid trademark registration?

22          MS. LUARDE:  That's correct, Your Honor.

23          THE COURT:  And then go ahead with regard to the

24   other aspects of this.  How many other Hotel Californias are

25   there in operation?

1          According to the defendant's papers, they have

2    literally listed tens, if not hundreds of other

3    establishments that are run or using that name.

4          MS. LUARDE:  Your Honor, it's fascinating.  In

5    fact, the hotels that I've listed are the hotels that we're

6    aware of.  There are hotels that the defendant has listed

7    that my client is unaware of.

8          But I will tell you, in the 30 minutes that we had

9    looking at the Internet upon receipt of the defendant's

10   moving papers, many of those hotels don't even exist or are

11   no longer in existence.

12         For example, Cape Coral, Florida.  There is an address

13   listed, but if you call the phone number there is no answer.

14         The New Jersey hotel in fact has been shut down and

15   closed.

16         The same thing with Duncan, Oklahoma.

17         So there are at least five or six within 30 minutes we

18   were able to go on the Internet and determine that they

19   don't exist.  And some are simply rental properties and are

20   not hotels.

21         So, again, many if not most of the hotels that were

22   listed by the defendant simply are not actual hotels named

23   The Hotel California.

24         THE COURT:  So you haven't had time go through

25   and search all of the various hotels that are listed, but

your cursory review indicates that many are not currently in operation?  Or never were?  I'm not sure exactly what it is that you're --

MS. LUARDE:  Many of them, Your Honor, I don't know if they ever were in operation.  But, for example, the Florida hotel, there is only a phone number.  There is no website.  And if you call the phone number, nobody answers the phone.  That's not a legitimate hotel.  A hotel would actually have someone who would pick up the hotel and answer and provide you with information to obtain a room.

There is also a Los Vegas California Hotel and Casino.  It's a completely different name.  It is not Hotel California.

There is also the Riverton, New Jersey hotel which is closed.

So these are not entities that, number one, we were aware of, and my client was not aware of, but number two, are not actual functioning hotels.

THE COURT:  Does your client have any intention of opening a hotel here in Ohio?

MS. LUARDE:  Our client has the intention of expanding the franchise.  There is no immediate plan to open a hotel in Ohio.

But, Your Honor, that's merely one of the eight factors to be considered in a likelihood of confusion, which

frankly is the real issue here, is whether or not there is a

likelihood of confusion between the Austintown hotel and our

hotel in California.

The reality is the marks are the same. They both use

the same name: Hotel California.

We advertise through the same medium. We both

advertise through the Internet.

The USPTO, in fact, issued an office action in

response to Mr. Rucci's request for the federal registration

of his trademark Hotel California. And the USPTO concluded

that there was a likelihood of confusion with my client's

registered trademark and refused to register Mr. Rucci's

trademark.

THE COURT: That's not part of your papers?

MS. LUARDE: We learned of this after filing the

papers. I have a copy of that for you, if you would like a

copy, Your Honor.

THE COURT: We would like to see it. Go ahead

with your argument. We will take a look at it in a moment.

MS. LUARDE: The Hotel California mark by virtue

of having been used for over 17 years is incontestable. The

strength of the mark is incontestable based on statutory and

case law.

The marks are the same. The services are the same.

Both entities are offering hotel services. Our marketing

1  channels are the same.

2       And frankly, customers, when they go to the website,

3  they're booking a hotel -- look, I don't really believe and

4  nobody really believes someone is going to mistakenly book

5  the Austintown hotel thinking that they're going to be in

6  Santa Monica, California.

7       But what they will believe, Your Honor, is that the

8  two hotels are somehow affiliated, that our Hotel California

9  somehow owns the hotel in Austintown, is associated with the

10  hotel in Austintown, endorses the hotel, or is somehow

11  associated with that hotel.

12       THE COURT:  What about a broad disclaimer being

13  placed on the website and other locations disclaiming any

14  relationship between the two?

15       MS. LUARDE:  Your Honor, that would be

16  insufficient in light of the fact that my client, you know,

17  if they intend to franchise and they have plans to

18  franchise, the disclaimer would have to continue to grow and

19  grow as the franchise grew.

20       At this point we're talking at least three different

21  sites and three different locations.  And again, I don't

22  think a disclaimer would be sufficient given the likelihood

23  of confusion that could occur and the harm to the reputation

24  and goodwill built up by my client in having the brand.

25       THE COURT:  They have had the mark for 20 years?

1    They obtained the mark in '97; is that correct?

2                    MS. LUARDE:  That's correct, Your Honor.

3                    THE COURT:  And at the time they obtained the

4    mark, they owned the three hotels?

5                    MS. LUARDE:  No, they did not, Your Honor.

6                    THE COURT:  I guess what I'm curious about is 20

7    years is a long period of time.  If you're intending to

8    franchise and/or make use of the mark in that fashion, you

9    would think that there would certainly have been more

10   activity over that period of time.

11                   MS. LUARDE:  Your Honor, there have been, again,

12   the license of the hotel in Palo Alto and the purchase of

13   the San Francisco hotel.  But realistically, we have been in

14   a down economy.  I mean, it's not like the economic times

15   have been sufficient where our client may have wanted to

16   expand the brand at that point in time.

17                   THE COURT:  That's '07 and '08.  But what

18   happened between 1997 and through 2006, 2007 when the

19   economic downturn began?

20                   MS. LUARDE:  Your Honor, I'll be honest with you.

21   I don't have any information from my client as to why they

22   may not have expanded at that time.  But certainly I'm

23   assuming there are business reasons why they didn't choose

24   to do so.

25        What I can tell you is based on conversations with my

1  client that they intend to expand the brand.  And the

2  difficult part here, Your Honor, is not just the fact that

3  my client wants to control his brand image, but the

4  Austintown site is a less than desirable hotel location.

5  The history of that site, as recognized by Mr. Rucci in his

6  papers, formerly was the site of the Go Go Girls Cabaret

7  which was a strip club.

8       Mr. Rucci himself has a very colorful history, as he

9  indicated in his own documentation here today, that that

10 type of reputation being associated with a hotel that was a

11 strip club could only harm my client's reputation for being

12 a family oriented and reputable hotel business.

13          THE COURT:  The site that's being developed in

14 Austintown, is it similar to -- I've got to be a bit careful

15 how I ask the question.  Is it similar in any way to the

16 previous establishment that was located there?

17          MS. LUARDE:  Your Honor, I was never at the Go Go

18 Girls Cabaret.  I don't know.  I know it is at the same

19 location.  And again, the history of that site as well as

20 the history of the owners of the Go Go Girls Cabaret as well

21 as the Austintown hotel are reputations that my client does

22 not want to be associated or affiliated with.

23       And based on the eight factors considered in the Sixth

24 Circuit, there is a strong likelihood of confusion.  And

25 again, the USPTO believed there was a strong likelihood of

1    confusion and that's why they denied Mr. Rucci's

2    registration.

3              THE COURT:  That denial, is that evidence that I

4    can rely on in making a decision?

5              MS. LUARDE:  Your Honor, it's certainly

6    persuasive on the issue.  It is not conclusive but it is

7    certainly persuasive.

8              THE COURT:  All right.  Go ahead.  I'm listening.

9              MS. LUARDE:  Your Honor, there are a couple of

10   arguments that Mr. Rucci put in his briefing, including his

11   Ohio Secretary of State filing that he made with the

12   Secretary of State registering his trademark.  A couple of

13   things I would like to point out with that.

14        The first one is that the registration itself does not

15   mean that my client's rights with the federal registration

16   are somehow lesser than Mr. Rucci's because he has a

17   registration in Ohio.

18        All the cases that he refers to are all cases

19   involving prior use.  They are not cases related to federal

20   patent -- or I'm sorry, federal trademark rights.

21        And frankly, in the application itself, Your Honor,

22   Mr. Rucci claimed that he was completely unaware of any

23   federal trademark registration with the name Hotel

24   California.  Mr. Rucci's application postdates the first

25   cease and desist letter that was sent to him via Federal

1    Express.

2          So that simply was a false statement made on the

3    application, and I believe that registration is invalid.

4          And in fact, Mr. Rucci in his briefing claims that the

5    first Federal Express package letter went to an address that

6    he didn't live at.  But that was the address that he

7    provided with the Ohio Secretary of State as his agent for

8    service of process.

9          Your Honor, the reality here is this:  We live in the

10   Internet age where people get on the Internet.  They book

11   their hotel rooms.  They look at travel guides, travel

12   advisories, rankings, comments by people who have stayed at

13   hotels.

14         I'm sure you've seen comments on hotels that you've

15   stayed at in various parts of the country.  Oh, this is a

16   great Marriott hotel.  This is a great Holiday Inn hotel.

17   And you rely on that information in making your decisions

18   about where to stay in other parts of the country.

19         So here, for example, our client has a history of a

20   strong brand name, a strong reputation.  They have extremely

21   favorable reviews related to their hotel and to their name.

22         You know, it's interesting because under Mr. Rucci's

23   theory, you know, if we were representing the Bellagio, he

24   could open up a Bellagio hotel in Austintown, file paperwork

25   with the Ohio Secretary of State, and it would be just fine.

1   And that's simply not the case.

2        Our client, like the Bellagio, has a trademark, a

3   registered trademark.  They have used that mark for over 17

4   years.  The mark is strong.  We're offering the exact same

5   services under the exact same name.  And we have the right

6   as the holder of the trademark to control how that name is

7   used, where it's used, and decide whether or not we want to

8   license that name to someone else.

9        We're in a situation here where my client has someone

10  in Austintown who wants to open a hotel under his trademark

11  name that used to be a strip club operated by someone with a

12  less than desirable history.  And he doesn't want to be

13  associated with that location or Mr. Rucci.

14        THE COURT:  So he's concerned about his

15  reputation in light of some of the prior history of the

16  business?

17        MS. LUARDE:  In part.  But he's also concerned

18  about his ability to control how his mark is used, how the

19  hotel is set up, how the service is handled.  All of the

20  normal things that go with day-to-day running of a hotel, he

21  wants to be able to control in a manner consistent with the

22  reputation he has built because he wants to continue to have

23  good reviews.  He wants to continue to get the business that

24  he's seen over the last 17 years.

25        And if something happens here in Austintown, it could

1    negatively impact his ability to run his hotel, develop his

2    franchise, sell that franchise to someone else, and that

3    could be a significant commercial problem for him.

4         I mean, imagine the headlines if you're my client,

5    "Hotel California Shut Down For Potential Prostitution."

6         What do you think that could do to his business?  That

7    could be a serious detrimental impact.  And that's an

8    extreme example.  But even an example of less than quality

9    service, less than quality cleanliness, all of those things

10   go into a consumer's selection of what hotel to use.

11        THE COURT:  I know you haven't had a chance to

12   look at all of the various papers, or the response, but

13   again, I guess my question is, I'm still wondering if there

14   is numerous, numerous other hotels operating under that same

15   name and what would be the import of that.  If your client

16   has chosen, for whatever reason, to not assert his rights,

17   again throughout the country if there is other Hotel

18   Californias, other hotels, I should say, using that name.

19        Obviously it's a famous song, 1977 forward.

20        MS. LUARDE:  Your Honor, before we filed the

21   paperwork, we did a search on the Internet.  And the hotels

22   we came up with were the Hotel Californias that we mentioned

23   earlier in California.

24        The one site that I found was the Cape Coral, Florida

25   phone number.  I called that phone number and there was no

1   answer.

2          The other hotels referenced by Mr. Rucci in his

3   papers, again, just a cursory look at them, most of them are

4   shut down or no longer exist or are under a different name.

5          Frankly, you know, Hotel California is different from

6   California Hotel and Casino.  That's a different name.  Or

7   California Motel.  Again, a different name.

8              THE COURT:  Well, I'm looking at

9   specifically -- I'm sorry to interrupt.  You're right.  I

10  agree with that.

11         I'm just curious whether there are specific hotels

12  around the country that have, again, carried the exact same

13  name, Hotel California.  That would be my issue here.

14             MS. LUARDE:  Your Honor, we have not found any.

15  And my client is not aware of any other than -- other than

16  the hotels that I've mentioned and the one Mr. Rucci is

17  opening in Austintown.

18         And if in fact there are other hotels out there

19  operating under the name Hotel California, we're not under

20  an obligation to pursue all of them at the same time.  We're

21  under an obligation to protect the trademark.  And if we

22  become aware of something, you know, our client will

23  certainly take a look at it and make a decision.

24         As far as the Hotel Californias in different parts of

25  the world, I know there is one in Paris.  There is one in

1    Germany.  U.S. trademark law doesn't reach a German hotel or

2    a Paris Hotel.  Those are completely irrelevant.

3         In fact, Your Honor, we became aware of the Austintown

4    hotel through a Google alert that referenced that this hotel

5    was opening up in Austintown.

6         Immediately after that, the letter was sent to Mr.

7    Rucci, a cease and desist letter.  We received no response.

8    We sent a second letter.  And again, we received no

9    response.

10        Between the time of the first letter and the second

11   letter, there was a lot of very interesting activity.

12   Although Mr. Rucci claims to have incorporated a couple of

13   years ago, after the first cease and desist letter was sent

14   out, Your Honor, Mr. Rucci filed his registrations with the

15   USPTO.  He also filed his registered service mark with the

16   Ohio Secretary of State.

17        In other words, I believe it wasn't until after he was

18   aware of our client's rights to this mark that he decided to

19   take affirmative steps to try to protect whatever rights he

20   believed he had.

21             THE COURT:  May I --

22             MS. LUARDE:  I think he willfully -- I'm sorry,

23   Your Honor.  He willfully continues to use the mark despite

24   knowing that our client owns the rights to that mark.  And

25   after he was advised of that, that's when he took additional

1  steps with his filings.

2        And in those filings he certified that he was unaware

3  of anyone else having any rights to those marks.  And that

4  was simply a false certification by Mr. Rucci.

5        THE COURT:  Do you have a copy of the letter that

6  you received from the PTO?

7        MS. LUARDE:  Yes, I do, Your Honor.

8        THE COURT:  Why don't you provide a copy to the

9  clerk.  I'm not sure if you provided a copy to the other

10  side as of yet.

11        Have you provided a copy to the defendant?

12        MS. LUARDE:  I have not, Your Honor, but I will

13  do so.

14        THE COURT:  I'll have the clerk -- do you have

15  extra copies with you?

16        MS. LUARDE:  I do, Your Honor.

17        THE COURT:  All right.  If you'd provide a copy

18  to myself and to the defendant, it would be helpful.

19        MS. LUARDE:  May I approach, Your Honor?

20        THE COURT:  You may.

21        MS. LUARDE:  And Your Honor, Mr. Rucci should be

22  aware of this, as this was addressed to him.

23        THE COURT:  That's a good point.

24        MS. LUARDE:  Your Honor, you know, the reality is

25  we're not trying to shut down Mr. Rucci or the hotel.  We're

1   simply trying to protect our client's brand name and

2   reputation and goodwill.

3       Mr. Rucci can proceed with his hotel in Austintown.

4   He can call it millions of different things.  He can call it

5   Hotel Florida.  He can call it Hotel Ohio.  He simply cannot

6   call it Hotel California because my client owns the rights

7   to that trademark.

8       And it wouldn't take much, frankly, to change signage,

9   to change a website, to change a Facebook page.  I could

10  change a Facebook page in five minutes or less.  The same

11  with a website.

12      And the reality is doing this now before the hotel is

13  opened and before Mr. Rucci starts to build up a customer

14  base based on the name of the hotel, in Austintown, you

15  know, he's better off changing it now and moving forward

16  with a new name.

17              THE COURT:  This was issued October 16?

18              MS. LUARDE:  Yes, Your Honor.

19              THE COURT:  How did they notify you?  By mail or

20  by e-mail?  How did you receive the notice?

21              MS. LUARDE:  We found it on the USPTO website.

22              THE COURT:  Maybe Mr. Rucci can explain to me why

23  it wasn't called to my attention.  It's e-mailed here to

24  him, according to this, issued, mailing date October 16,

25  2014.  It does have an e-mail address.

1      Is there a reason why you didn't call this to my

2 attention, counsel?

3          MR. RUCCI:  Judge, I'll address all that.  Would

4 you like me to --

5          THE COURT:  You can address it all in your

6 argument.  I'm just a little curious because you filed a

7 response in opposition and you filed a motion to dismiss.

8 And I'm a little curious why this wasn't called to my

9 attention and at least given some way to distinguish it.

10      Let me ask the plaintiff if they're done with their

11 presentation, and we will be glad to hear from you.  Just a

12 moment.

13      Do you have anything else you would like to add?

14          MS. LUARDE:  Not at this point, Your Honor.

15 Thank you.

16          THE COURT:  All right.  Sir, on behalf of the

17 defendant, what is your argument?  What statement would you

18 like to make here with regard to this matter?

19          MR. RUCCI:  Judge, I apologize for that.  That

20 was not intentional, and let me explain.

21      When I received this, what I observed from it, and as

22 you'll see, is that the examiner believed that I was opening

23 a hotel in California.  I have a right to respond to him and

24 explain that and still try to get it licensed.  And so

25 that's my intention.

1          Additionally, Judge, if you -- in the past two days

2     what I've been doing is learning facts on this case.  And

3     The Hotel California registration, for example, was denied

4     because of geographical limits and things of that nature.

5          And so they wrote to the examiner and got him to

6     reverse their decision.

7          So from my view, it was the same thing.  And I think

8     the critical factor that was missing in the analysis -- and

9     that was from my fault for not filing it correctly -- was

10    letting the examiner understand that I was in Ohio, which I

11    believe will make a very distinct difference.

12         The reason for that, Judge, is I pointed in my

13    filings, in the two registrations, one of them excludes the

14    word "California" and the other one excludes the word

15    "hotel."

16         And so there is the exclusions that were there, that

17    was pretty much because the two words are common and there

18    was geographical limits.

19         I think that, if I understand this correctly, when it

20    is analyzed as being in Ohio, then at that point the public

21    would have a different understanding of what Hotel

22    California is.  And I think that the examiner would look

23    upon it more favorably.

24         Additionally, I didn't know about that The Hotel

25    California was from the supplemental registration until I

1    started doing more digging with that.

2            And so Judge, if I may, within this, what I'm saying

3    to the Court is this is the same typical document that was

4    submitted to the plaintiffs when they were denied.  And then

5    they submitted documentation and got it to reverse.

6            And actually, how the documentation occurred in my

7    reading of a 175-page document in the trademark office is

8    that what the plaintiffs did, is that the former owner, they

9    put together an affidavit or some kind of a licensing from

10   him and said that, you know, we're giving it to you now

11   to -- the new buyer of the hotel.  And that was the

12   convincing document, as I'm reading it, Judge, that made a

13   difference.

14           However, a few more things that I would like to say

15   about that which are in line with some of your questioning.

16           One of the affidavits from the Plaintiff Butler was

17   that he was going to franchise and do all these other

18   things.  And this was over ten years ago.

19           What I've heard today is about franchising.  And

20   Judge, if you look at the documents that I submitted, there

21   is no franchise.  There is only one license.  That's it.

22   That's the one in San Francisco.

23           The one in Palo Alto they are referring to, that's the

24   former owner that was there.  So they have done nothing in

25   20 years other than buy one hotel, which is a 36-room hotel

1  that's a few blocks off in Santa Monica by the beach.

2  That's it.

3       When they talk about branding, branding in the hotel

4  business, what it means is you create a reservation system.

5  You have a sign of some kind and things of that nature.

6  None of that's been done in 20 years.

7            THE COURT:  Did they have to do something?  I

8  mean, if they own the trademark, are they compelled or

9  required, if they don't have either the resources, the

10  wherewithal?  If they have the trademark, must they go out

11  and franchise?  If they want to protect it from franchising

12  in the future, can't they do that?

13            MR. RUCCI:  Judge, there is a lot of stuff I

14  don't know on this.  I'm learning it in the past two days

15  and so I don't really have an answer.

16       But what I can tell you from my logic is that

17  everybody's here because the popularity of that name was

18  done by the Eagles.  Not the plaintiffs.  That name is

19  popular.  They grabbed it, and that's there.

20            THE COURT:  Well, they've got it.  They have a

21  right to it.  They have a legal right to it, do they not?

22            MR. RUCCI:  Judge, they do.  But as I understand

23  the law on this as I put it in my papers, they also have to

24  prove, either it's me or them, that somewhere there is going

25  to be some confusion.

1    And I've heard a lot of statements, but none of them

2  ring a bell with me about the confusion.  We're 2,500 miles

3  away.

4    Some of the confusion is related to the fact that we

5  are going to run a dingy hotel.  As I gave the Court some

6  papers, we spent $5 million building it.  We have got palm

7  trees up which nobody has in Ohio.  I have a three-star

8  Michelin trained chef inside the restaurant.  We have a

9  night club, a comedy club.  We've hired people.  All the

10  rooms have been redone.  There is 42 suites that are there.

11  The place is absolutely amazing.  We have fire pits on the

12  outside with the other things that we have done.  It is not

13  anything comparable to what the plaintiffs have done.

14    So the suggestion that that's something that

15  besmirches their name is ridiculous.  If anything else,

16  we're going to elevate it from that perspective.  So that

17  doesn't -- that doesn't mean anything with it.

18    The issue on the confusion, as I see it, Judge, is not

19  is the name popular?  It is because of the Eagles.  The

20  question is, does the word "Hotel California," is it related

21  to the plaintiffs?  And nobody is going to say that it is.

22  In Santa Monica, I'm sure they are because they recognize it

23  as one of those little boutique hotels.

24    In fact, that's what his registration in the federal

25  filing said, that this is a boutique hotel.  We are

1 specializing with these beach properties. And so therefore

2 they're going to recognize it to that effect and nothing

3 more than that.

4 And the idea that me, here in Austintown, Ohio with

5 this amazing hotel, is going to impact them, it just -- just

6 the question to me seems like it's absolutely ridiculous

7 because the recognition I've had in the past year when the

8 sign went up was with the Eagles. That's what they

9 recognize. That's number one.

10 Number two, there is a new casino that's been built in

11 Youngstown called the Hollywood Casino. I'm looking for

12 some recognition from ourselves with that.

13 When I decided two years ago to name it Hotel

14 California, what I did -- and again, didn't know much about

15 trademark law at that point and I'll explain some of things

16 that have been stated here -- is what I did I just ran a

17 search. And I saw the name all over the place. I saw

18 nobody had a connection or was the same, for example, like

19 Holiday Inn where they have trademarks, reservations. And

20 so I concluded, Judge, that it was available.

21 Now, maybe that was sloppy in the end, and probably

22 was, but that's how I proceeded forward with it.

23 And even when I -- when I received their notice -- the

24 statement by the way, Judge, that was made to the Court was

25 that my state filing makes a statement that's false, that we

1   didn't know about them.

2          As I pointed out on page 21 in my brief, and I made a

3   copy of it from the filing, you'll see that my block in

4   there was that I don't have the federal filing.  So I

5   notified the State of Ohio correctly to what that was.

6          THE COURT:  I'm sorry.  So you did notify them

7   that in fact you're aware that the plaintiff held the

8   trademark.

9          MR. RUCCI:  No.  Actually, Judge, what it says in

10  there is that do I hold it?  And I said absolutely, I don't.

11  And that's what I -- that's what I informed --

12         THE COURT:  I know, but the point they're making

13  is that you were given notice.  You were aware of the fact

14  that they owned the trademark.  And then all these filings,

15  all these filings occurred after the fact, after their

16  notice to you about their ownership and their cease and

17  desist letter.

18         MR. RUCCI:  Judge, here is what occurred.

19         THE COURT:  Why would you go out and try to -- I

20  don't know.  I shouldn't say.  I'm not -- I shouldn't say

21  that you were trying to circumvent it.  Of what effect, or

22  why would you go back and make these state filings knowing

23  that the plaintiff had this trademark?

24         MR. RUCCI:  Couple things, Judge.  First thing is

25  where I've been living at in the past year is at the hotel

1    that's in Austintown.  They're correct that my address with
2    the Secretary of State was my home in Poland.  But that's
3    actually a place that's a condo office which my daughter
4    uses.  I haven't been there for a year.
5            THE COURT:  They don't know that.  They're not
6    required to search you out and try to find out where you're
7    located.
8        Can't they rely upon the public record as to your
9    address when they send the notice?
10           MR. RUCCI:  Judge, the second one they got it
11   correctly.  The second one --
12           THE COURT:  That's the purpose of the address
13   being registered with the Secretary of State, right?
14           MR. RUCCI:  It is, Judge, but I'm telling the
15   Court I never got the first one.  I got the second one.
16       The reason those filings occurred is that as we were
17   putting this project together, as explained in my documents,
18   with the funding from this Ponzi scheme lawsuit where we had
19   gotten the victims to invest, we ran out of money.  We went
20   and borrowed a million dollars.  The people that gave us the
21   million dollars talked to me about that, about getting a
22   registration.  I happened to do it after I got multiple
23   calls.  I looked into it.  My timing just happened to be
24   there about the same time.  It's something I would have
25   done.  I still was very sloppy as I was putting it together

1  because I was just learning as I'm going.

2       As I mentioned in the federal one, the federal one

3  didn't even understand that I was going to be in Ohio

4  instead of California.  So these are things that I was going

5  to fix as I was moving forward with it.

6       So -- but even having said that, Judge, in the Ohio

7  filings, it doesn't require me to have a federal

8  registration.  You inform the Court this is what I'm looking

9  to do in Ohio.

10      And I am, no matter what's said here, I am correctly

11  the first one in Ohio to do Hotel California.

12      In fact, as I noted in my filings there was a bar in

13  Austintown called Hotel California.

14      In regards to the statement that a lot of these are

15  closed, I find that very difficult to believe that these

16  people have active websites today and are closed.  So all of

17  that was done through the search the past two days alone,

18  what we uncovered with Hotel Californias.

19      It's a name that, Judge, is very common.  And in the

20  past year for me, what people have come up and talked about

21  is the relationship to the song.  And that's the connection

22  we're looking to make.

23      And as I made in my affidavit, Judge, we're looking to

24  do more things with that.  For example, we have speakers in

25  all the rooms.  We play the song throughout the place.  We

1    have a painting that we are having made that's tied to the

2    song.  We have two large guitars that are going to be made

3    that are going to be put up next to the sign.  And you can

4    see from the pictures, Judge, this is an amazing luxury

5    building.  It's not something that is there.

6         I recognize their talk about the past.  I recognize

7    that.  It's a lot of retaliation that went on in there.  I

8    prevailed in all parts of it.  But that's not where the

9    future is going.  The future is this amazing building that I

10   hope to call Hotel California because of its connection to

11   the song, to the fact that the local people, how they deal

12   with its connection to California.

13        And Judge, "hotel" and "California," those are two

14   common words that are connected together.  I mean --

15             THE COURT:  Is the hotel open yet?

16             MR. RUCCI:  No.  We are looking to do an open

17   house in about a week.  We are finalizing furniture.  We are

18   looking to open in about three weeks.

19             THE COURT:  Do you have a liquor license as of

20   yet?  I saw something in the papers about there being some

21   issue.

22             MR. RUCCI:  No.  It's part of that whole process

23   that I'm going through, but it's getting better every day.

24   And we have a hearing on the 6th and I'm sure that we will

25   get it then.

1          THE COURT:  I'm not going to get into what the

2     prior history of the business may be.  That's, again,

3     that's -- this is more of a legal issue, a specific legal

4     issue, if they own the mark and if they have a right to

5     assert it and if all the other elements that are before me

6     related to the likelihood of confusion, etcetera, and if the

7     proper burden is met for the issuance of a TRO.  That's

8     really the issue before me.

9          But this, I'm just scanning it, this opinion from the

10    PTO is quite interesting, this office action.

11          MR. RUCCI:  Judge, but as I stated, this isn't

12    concluded from me.  My response is due, and they gave me a

13    date.  I have, like, six months.  I'm going to respond to

14    them and I'm going to tell them I'm in Ohio.  I believe that

15    will make a difference.

16          Like I stated, just like the plaintiffs were denied

17    theirs, they went back in, gave additional paperwork, and

18    got it reversed.

19          THE COURT:  I'm just scanning this.  I want to be

20    careful.  It appears to me from reading this they know

21    you're from Ohio.  It says, "The following web pages which

22    establish the hotel services are provided in California

23    support such a presumption despite the fact the applicant is

24    from Ohio, namely" -- and it goes on.

25          So the PTO knew that you were from Ohio.  I'm

1  referring to -- the document isn't paginated, interestingly,

2  but it is the top of the page that reads "Applicant's mark

3  is Hotel California for restaurant and hotel services."  And

4  then you go on down and it talks about the geographical

5  location.

6       It says, "Although the record is currently silent with

7  respect to whether applicant's services in fact originate in

8  California," and it goes on.  And it does apply a

9  presumption that the services which applicant seeks

10  registration originate in California which would appear to

11  be the case.  It originates in California.

12       But then they go on to talk about that you are from

13  Ohio.  So they know.

14            MR. RUCCI:  Judge, but as I read it, I thought

15  that was the critical distinction.  And here is why.  Here

16  is how I'm reading this.  What I'm reading is that if you're

17  from California and you have something that's listed like,

18  say, Hotel California, the way I'm reading it is they turn

19  around and they say, well, you know, that's -- I don't know

20  what the correct words are.  It's lower level.  So therefore

21  we're -- it's not unique in that way.

22       But if I take now Hotel California in Ohio, I believe

23  it's the other way.  In fact, I think I even cite some of

24  that in one of -- in one part of my brief where I reference

25  that from one of the cases that they had in there, to that

1    effect.  And I think that, Judge, that will change it when

2    they see that, to that effect.

3        And additionally, some of the other things that I can

4    point out to them, too, is the fact that it's been 20 years.

5    There has been no franchise.  Some of the statements that

6    when they went and got the trademark ten plus years ago, the

7    affidavit said they were going to franchise.  Judge, they

8    haven't done it.

9        And these are things that I can present to them to

10   also get them to say, well, okay, that's something different

11   for that effect.

12       The case law on it can be analyzed on it this way.

13   I'm not questioning that, Judge.  But I'm not through with

14   this process.  And I think I can still do that.  I do have

15   still the state registration.  I have a hotel that's done

16   it.  They have done nothing in nearly 20 years.

17       And also, the other things that this examiner didn't

18   get is all these other Hotel Californias that I pointed out

19   in my briefs.  And I intend to go back to them with that,

20   Judge, and I think that they will look at it differently

21   within those facts that are there.

22       I can recognize, Judge, if they were here and they had

23   a reservation system like Holiday Inn, they're trying to

24   build it, I get that.  I get that.  That makes a lot of

25   sense.

1        But that's not what we have here.  The only thing

2   we're doing here is we're excluding me from using a name

3   that's made popular by a great rock band for no reason

4   because it's not going to impact them in any way.

5        And when it's done, this place is going to be amazing

6   with the things we're doing.  I mean --

7             THE COURT:  That all may be true.  But the bottom

8   line is if they own the trademark to the mark, then they

9   have a right to control the mark.  I mean, that's under the

10   law essentially.

11        Everything you're telling me, it may be a wonderful

12   location.  It may be a wonderful hotel.  It may have all the

13   attributes that you think.  I obviously, candidly, being an

14   Eagles fan, having gone to maybe ten of their concerts, know

15   full well over the years, you know, the song, etcetera.

16        But that is, again, somewhat beside the point.  And if

17   they have the mark, then they have a right, at least as I

18   see it, again, subject to, again, reviewing all the

19   arguments, they have a right to control the -- to license

20   the mark, who uses the mark.  That is patently the purpose

21   behind, you know, the trademark law, intellectual property

22   law is to give them the control.

23        And so that is the challenge here.

24        Now, are they required to franchise it?  Can they

25   simply have it and hold it?  Is it like, you know, the

1    Internet where I can in essence select and choose and limit

2    an IP address?  That's not perhaps a great analogy, but that

3    happens all the time.

4              MR. RUCCI:  Judge, by their own admissions

5    they're not going to Ohio.  By the facts that we have here,

6    we have one license only in that period of time.  When you

7    ask me are they required, here is what logically it seems to

8    me.

9         It seems to me that if you're branding out there and

10   you're going out there, then somebody else, you'll have more

11   likelihood of confusion because they get larger.  By logic

12   and the likelihood of confusion test, if someone has one

13   place and we're 2,500 miles away, there is no likelihood of

14   confusion.  That's why they have the test.

15        If the test is they have the mark and I'm out, then I

16   don't know why I'm going through an eight-part test.

17        So as I see it, Judge, the test still requires us to

18   go through it.  And as I see the test, and when you go

19   through it, under likelihood of confusion, the only

20   confusion is going to be with the Eagles.  I mean, they are

21   the one that can say no to me, and apparently they're not.

22   But I can't see where somebody with one hotel in 20 years

23   with one other license, no franchise, no operational system,

24   is going to be confused by anything I'm doing here in Ohio.

25              THE COURT:  I don't know the answer to that

1    question, counsel.  I really don't.  Except that, with just

2    one caveat, and that is in today's world on the Internet, if

3    you Google a Hotel California and all of the sudden your

4    hotel pops up and the one in California pops up, the

5    question becomes, are they related?  Are they in some way

6    associated with one another?

7          Likelihood of confusion, I think in today's world and

8    in the world that we live in with the Internet and the

9    search engines and things of that nature, it's just a

10   different matter, dramatically different matter than it may

11   have been years ago.

12         MR. RUCCI:  Judge, their hotel is Hotel

13   California of Santa Monica or Hotel California of Los

14   Angeles on their website.

15         THE COURT:  Okay.  Does it say that?  I haven't

16   looked at their website.  Does it say Hotel California of

17   this or of that?

18         MR. RUCCI:  Their website, the first thing at the

19   top it says "The," the word "the" is used, "Hotel

20   California."  And I don't know if it says "of," and it says

21   "Los Angeles" underneath it.

22         THE COURT:  There is a big difference in saying

23   that's Hotel California of Los Angeles than simply saying

24   Hotel California and then located somewhere.  That's a big

25   difference.

1          MR. RUCCI:  The two hotels, Judge, that are at

2     issue that they put in their documents, the Hotel

3     California, the one in Santa Monica and the one in San

4     Francisco, both, in their websites, are Hotel California.

5          Theirs actually says Los Angeles, although in their

6     papers they say Santa Monica.  The other one says Hotel

7     California, San Francisco.

8          So they're labeling their location with it.  And

9     that's the two that I see.

10         The other thing is when you say on the website in the

11    search, again, like we have pointed out, all the stuff that

12    we have in there, we have the WW's.  Those are all in there.

13    When you go through the search, there is a countless volume

14    of information that comes up.

15         In fact, even in the Patent and Trademark Office, they

16    have multiple filings for Hotel California.  I found 36.  I

17    couldn't tell, as I'm learning this, which ones were live or

18    not.  I know the ones I pointed in there were live because I

19    saw the registration.  There was countless of them that are

20    there.

21         And so again, the exclusivity or lack of exclusivity

22    and the connection to somebody else's famous song, Judge,

23    the way I'm seeing it, it's kind of like the people that

24    were copying things like, for example, Elvis Presley or Babe

25    Ruth or something that somebody else made famous at some

1    level as to what part do they get to do that with?

2         Again, what I think, Judge, and the analysis is, is

3    the likelihood of confusion goes downward especially because

4    I think the test of likelihood of confusion is not is the

5    name strong?  I get it; it's from the Eagles.

6         The question is, is the likelihood of confusion

7    connected with the plaintiffs?  And as I stated multiple

8    times in my filings, we will be happy to have a disclaimer

9    that we're not associated with them in any way.  And that

10   could solve it.

11        And lastly, to some level -- and again, I'm going

12   through the dichotomy as I'm learning this -- I do have a

13   state filing which they did give me.  I showed them that we

14   were in use with all the other stuff.  They actually first

15   sent it back to me because they wanted to see that.  And

16   they did register it.  At the time it was registered, Judge,

17   it took about two weeks.  It was a process that took place.

18   And they did register it in the State of Ohio as I noticed

19   in the various cases.  It does recognize a strong right for

20   it.

21        Judge, if they were here, I get it.  You know, if they

22   were somewhere in the state or if they were moving about the

23   state, I get it.  And I wouldn't have been here with that

24   name when I was seeking it.  I would have called it The

25   Palms Hotels because of the palm trees that we have.

1      The hotel that we have, unlike their hotel, it's so

2   unique when you see it. At nighttime, it has lights that

3   you get to see. So it's creating its own identity. And

4   contrary to the one article they gave me, we've got a lot of

5   very good articles. We have had senators there. We have

6   had people going through the place because they are starting

7   to see the amazing thing that we're trying to do.

8      I hate to lose the name, Judge. I get it that it's

9   early, but it's something that's giving us an identity

10  that's making this connection that's, for lack of a better

11  word, very cool.

12     And we both have the same desires to do that. The

13  only difference is if I started 20 years ago and I was going

14  to do a hotel franchise, as they stated to the Patent and

15  Trademark Office, I would have done something with it. And

16  they haven't done that.

17     And some of that, the lack of growth, Judge -- maybe

18  it's 100 percent correct. It doesn't punish them. But the

19  lack of growth means there is no likelihood of confusion

20  because they haven't grown the brand.

21     And when they call it the brand, I find this really

22  suspicious because when you look at the two websites, the

23  San Francisco and Santa Monica, they are totally different.

24     And what I did is I had an investigator call them to

25  see if they are tied together in any way. He said, the only

1  thing they do is license them.  That's it.  Everything else

2  is independent.

3              THE COURT:  Don't they have a right to do that?

4              MR. RUCCI:  Judge, they do.  They do have a right

5  to do that.

6              THE COURT:  I guess the problem I have with your

7  argument is that, perhaps -- I understand you're saying,

8  well, they're not doing business in Ohio.  They have no

9  plans to do business in Ohio.  But does that mean that their

10  trademark isn't effective or they don't still have the right

11  to control the name, make use of it, or that there isn't

12  still potentially a likelihood of confusion?

13        I mean, if I were to adopt that view, then I guess the

14  question is of what effect is their trademark?

15              MR. RUCCI:  Judge --

16              THE COURT:  I mean --

17              MR. RUCCI:  Judge, their trademark is like any

18  other trademark.  As I understand it, trademarks last for a

19  period of time and you grow your brand.  And then after

20  that, you can get an extension.  When you get an extension,

21  you've got to tell them you're doing something with it.

22  Well, there has nothing been done in 20 years.  That's the

23  problem.

24        So somewhere along the line I would like to think that

25  the words "Hotel California" have not been taken out of the

1  use just simply because somebody rushed there and got it

2  patented first.

3      I get the fact they got there first.  They had a right

4  to do that.  And they had a right to build it also, too,

5  Judge.  And they didn't do that.  And by not doing that,

6  when I'm 2,500 miles away, then I'm not conflicting with

7  them.  And that's the way it looks to me within the law.

8      If the test was simply that they had it and that was

9  there, that's a different test.  But the test is, is there

10 some confusion with it?

11     You know, like you stated, Judge -- and I get that

12 point, too -- they have a right to control their brand,

13 etcetera.  But that's not the test.  The test is, am I doing

14 something that's going to confuse with them?  And no.  And I

15 also offered to put a disclaimer.  That also helps along the

16 way.

17     THE COURT:  Maybe you better take a look -- we

18 should take a break.  You should probably take a look at it.

19 I'm just skimming it.  I don't have a chance -- I'm

20 listening to you and trying to refer to bits and pieces of

21 this.

22     You probably should look at the office action.  It

23 talks about some of the issues you're touching on here, some

24 of the issues -- Unless you read this already.  It tells

25 you, it talks about refusal due to likelihood of confusion,

1  geographic refusal, supplemental register.  It touches on

2  many of the issues that are relevant to my, I think, to my

3  consideration here.  With all due respect, who better than

4  the PTO, the office that it's their expertise?

5          MR. RUCCI:  Judge, the difference is, let's

6  pretend that the TRO supplement that I have given the Court

7  and all that was not there and that is the facts here.  I'm

8  telling the Court that I'll have time to go through this and

9  fix those things.  They had no facts.

10          What I did is I went through the electronic thing

11  that's on the Internet as I'm learning to do this, and I

12  sent it in.  They have no attachments from me.  And I

13  believe that when they look at the facts, how many have been

14  out there, how long they have had it, the -- I mean, the

15  argument that The Hotel California is the same as Hotel

16  California, then why would you need the second one?  So

17  those are issues that will be brought out.

18          THE COURT:  Do the plaintiffs have the right to

19  respond to the PTO?

20          MR. RUCCI:  They actually have a right to oppose

21  it, I believe, and they can.  But that whole process is

22  going to take some time.

23          THE COURT:  Did you oppose the original?  Or were

24  you aware of the original application?

25          MS. LUARDE:  Your Honor, we were not aware of the

1    original application.  We became aware of the hotel in July.

2    We sent a cease and desist letter on July 14.  And we

3    became -- the filings occurred after that date.  And then we

4    sent a second cease and desist letter.

5            THE COURT:  When did you become aware of this, of

6    this proceeding before the PTO?

7            MS. LUARDE:  Frankly, Your Honor, I became aware

8    of it when I was retained by my client.  We did a search of

9    the USPTO and learned that Mr. Rucci filed his request for a

10   trademark after we sent him a cease and desist letter.

11           THE COURT:  Both at the state and with the PTO?

12           MS. LUARDE:  Yes, that's correct, Your Honor.

13           THE COURT:  Both with the state and PTO?

14           MS. LUARDE:  That's correct, Your Honor.

15           THE COURT:  Why don't we do this, counsel.  Why

16   don't we take a moment and read through this.  Unless you

17   read it already.

18           MR. RUCCI:  Judge, I would like to read it so I

19   can respond to the Court.  And I appreciate the opportunity.

20           THE COURT:  All right.  We will take a look at

21   this and read it.  It's some detail, and it might have a

22   bearing on what we undertake to do here.  Thank you very

23   much.

24       We will step down for a minute.

25       Counsel, while I'm doing that, you might want to

1    confer with one another and talk about whether you can

2    possibly find some middle ground while we try to sort all of

3    this out.  But that's entirely up to you.

4        (Recess taken, 2:20 p.m. until 2:55 p.m.)

5        THE COURT:  All right, counsel.  Having had an

6    opportunity to review the office action from the PTO, is

7    there any additional arguments that you wish to make on

8    behalf of the plaintiff?  Anything else you would like to

9    call to my attention?

10       MS. LUARDE:  Yes, Your Honor.  I have just a few

11   points I would like to make if that's okay.

12       The first thing, in response to some of the arguments

13   that were made, Your Honor, you're absolutely correct.  We

14   have a trademark, a federal trademark, that we can use

15   anywhere in the United States, and we are protected and able

16   to use that.

17       We don't have to expand.  Under Sixth Circuit case

18   law, there are eight factors.  Likelihood of expansion is

19   only one of the factors.

20       And I want to point out that Mr. Rucci in his briefing

21   refers to an Eighth Circuit case.  That Eighth Circuit case

22   refers to a case called *Dawn Donut* which is an old case and

23   it does not apply in the Sixth Circuit.

24       So just so you're aware, that's only one of eight

25   factors to be considered.  And six of the eight factors

1    weigh in favor of my client.

2        I also want to make sure that you understand with

3    regard to the likelihood of confusion, our client draws

4    customers from around the United States and globally.  There

5    are people from Ohio, Pennsylvania, Michigan, Indiana, and

6    New York all who stay at his hotel in Santa Monica.

7        So there are people who could very easily have stayed

8    at our hotel and also be familiar with the Austintown hotel.

9                THE COURT:  Is that reflected in his affidavit?

10               MS. LUARDE:  Your Honor, I don't believe I had

11   that level of specificity in the affidavit.  I think I say

12   that we draw customers from around the globe and the United

13   States.

14               THE COURT:  All right.  Go ahead.

15               MS. LUARDE:  The next thing I would like to point

16   out, Your Honor, is with regard to the Secretary of State

17   filing, the cease and desist letter was sent in July of 2014

18   advising Mr. Rucci that we had the trademark.

19        The statement that we take issue with is the following

20   statement:  "To the knowledge of the person verifying the

21   application, no other person has a registration or a pending

22   intent to use application of the same or a confusingly

23   similar mark in the United States Patent and Trademark

24   Office for the same or similar goods or services."

25        And Mr. Rucci signed this certifying that that did

1  not -- that there was no pending application or actual

2  application or actual trademark with the USPTO.

3      That's false.  That's a false statement.

4          THE COURT:  How do you establish that it's false?

5          MS. LUARDE:  Because he received notice in July

6  of 2014.  I have in front of me the Federal Express printout

7  showing that the package was delivered on July 16, 2014 to

8  the address listed in Mr. Rucci's filing with the Ohio

9  Secretary of State giving the address for service.

10     So the package was delivered to Mr. Rucci on July 16,

11  2014.  And in October, he signed a certification stating

12  that he's not aware of any existing trademark.

13         THE COURT:  When did he submit his application to

14  the PTO?

15         MS. LUARDE:  In September of 2014.  So again,

16  after the July, 2014 date.

17     And this all goes to the willfulness of the defendant.

18  He was aware of our trademark.  He filed his applications

19  with the USPTO.  He filed his registration with the

20  Secretary of State.  That filing with the Secretary of State

21  and with the PTO make false representations about Mr.

22  Rucci's knowledge.

23     And any argument that he makes that the Secretary of

24  State filing somehow gives him rights to use the name in the

25  State of Ohio legally is incorrect.  But frankly, that

1    filing has no merit because he made false statements within

2    that filing.

3                THE COURT:  All right.  Go ahead.  Are you taking

4    any action to address that filing in the State of Ohio?  Or

5    is there any action you can take?

6                MS. LUARDE:  Your Honor, at this point we are not

7    taking any action.  We are looking into it.  I'm not aware

8    of what we can do, but I certainly wanted you to be aware of

9    it.  Because again, for willful infringement, Your Honor, my

10   client is entitled to, you know, attorney's fees, and under

11   Ohio statutory law treble damages for willful infringement.

12   And that's what we have here.

13        And Your Honor, again, I just, you know, to sum it up,

14   we don't have to expand to protect our rights.  I've heard a

15   lot about not expanding into the State of Ohio.  Not

16   expanding beyond California.  My client doesn't have to

17   expand.  They could have, you know, the same hotels in

18   operation.  As long as they continuously use the trademark,

19   they are entitled to have that trademark protected.

20        Think about it.  Does the Bellagio have to open hotels

21   up outside of Las Vegas in order to protect its trademark?

22   Absolutely not.  That's not the law.

23        Likelihood of expansion is just one of eight factors.

24   Six of the eight weigh in our favor.  There is a likelihood

25   of confusion, and we are entitled to the relief that we

1  seek.

2         THE COURT:  All right.  Thank you.

3         Counsel for the defendant, do you wish to either

4  respond and/or address the office action letter?

5         MR. RUCCI:  I do, Judge, a couple of them.  I

6  could take them in either order.  I guess we could start

7  with the office action, Judge.

8         And here is my reading of it, Judge.  And I will

9  submit, if the Court will allow me, an example that this was

10  the identical thing that was done with the plaintiffs.  They

11  had a similar denial.  They submitted evidence.

12         As I read it, Judge -- and I numbered the pages 1

13  through 8, 9, as they were.

14         The writer, who I have a phone number and an e-mail

15  and I could speak with, specifically says, "Timely respond

16  to the issues" on page 1.

17         "Submit evidence" on page 6.

18         "Respond with evidence" on page 7.

19         "Show the mark in use" on page 8.

20         And then on page 8, Judge, they tell me very

21  specifically, "The applicant must directly answer the

22  following questions:  Provide written statements specifying

23  the goods and services in use, where they originated from,"

24  which I think was the critical factor to this writer, the

25  examiner.

1          Judge, as I see it -- and I would be happy to provide

2     a supplement.  And I know of one because I've only went

3     through a few of the cases, the *Ameritech* case, for example,

4     was a case -- that's one of the ones cited in my brief at

5     811 F.2d 960.

6          It's an example of a case where the other side tried

7     to get a registration after somebody else started using it

8     and they didn't get it.  And it was just another thing that

9     the Court looked at.  It wasn't the denial.

10         Judge, the way I read the office action is this

11    writer, this attorney examiner, is going through basically

12    the first part of trying to determine is there something out

13    here that you match with?  In this case Hotel California.

14    And is the use the same?  In this case hotel services.  And

15    they conclude correctly that they are.

16         But that's just part of it.  The writer, for example,

17    does not go through the eight-part test.  The eight-part

18    test is very different in this case over the infringement.

19    What they're saying here is here is what we're finding.

20    They're similar for registration.  You can give us evidence

21    and make arguments to whatever effect, and then go at it.

22         And Judge, as I stated to you, I fully intend to go

23    back with evidence, because I think they will see the many

24    things that I've learned that I think will give me the

25    registration.

1          But the thing is, the registration certainly can't be

2     what I have to have to come before this Court, or to be

3     hauled into this Court, because right now the issue is the

4     eight-part test over the confusion.

5          And as I analyzed it, like, for example, I heard the

6     word "Bellagio."  Well, Bellagio wasn't made famous by

7     somebody else and then they grabbed it so the name is out

8     there for anybody.  It was made famous by Bellagio, and it

9     makes sense that Bellagio owns it.  I get that.

10          But Hotel California was made famous been somebody

11     else, and they grabbed the name.  And they are very far away

12     from us here.  So there is issues about how the mark would

13     actually be used.

14          The various issues that are here, as I see this,

15     Judge, respectfully with the Court, is the issue of are they

16     going to be harmed if I open up this hotel in Youngstown,

17     Ohio, in Austintown, Ohio, from their great distance?  And

18     have they done enough out there so that it will conflict?

19          Judge, if the test is, is that you are on the

20     Internet, they are on the Internet, we are all on the

21     Internet today.  If that's the test, then one person in one

22     little place gets to take out the rest of the United States.

23          And that seems to me that that's not what I'm reading

24     in my limited knowledge on this as I'm starting to get up to

25     speed.

1    It seems to me that the test is more about if we

2  conflict with you, we don't get to do it.  And I get that.

3  One of the reasons that makes sense is because I'm out there

4  to steal their business.  And I get that.  But we are really

5  far away.  We are not impacting their business.  We are not

6  able to steal their business.

7    The Court had said, well, do they get to control the

8  mark?  I get that, too.  But at the same time, that's only

9  relevant if I conflict with them so people are going to

10  recognize me as being part of them.

11    I have offered to put a disclaimer.  I'm 2,500 miles

12  away.  My building is very different than their 36-room

13  hotel.  They have not expanded in the 20 years.  And it

14  seems to me very terrible that we would take the beautiful

15  words from the song "Hotel California" out of the lexicon

16  because of this.

17    I'm not --

18    THE COURT:  Is not all those things what the

19  examiner considered?  In many respects the examiner, looking

20  at his letter -- and candidly, counsel's correct based on my

21  very cursory review of the law, the letter is persuasive and

22  it's something that I should and in many ways I'm required

23  to consider.

24    The examiner went through the summary of the issues

25  here.  The refusal is based upon due to likelihood of

confusion, geographical refusal, supplemental register,
specimen refusal.  There is a request for information.  But
the examiner went through and said he thinks there is
clearly a likelihood of confusion with the marks, with their
marks.

He says, "Reasons:  Similarity of the marks."  They
are identical.  They are not just similar.  They are
identical.

"The nature of the goods and services."  There is no
doubt that they are similar, to say the least.

And "the similarity of the trade channels of goods or
services."  Now, your argument is, well, because I'm here in
Ohio, there can't be any confusion with a Hotel California
and hotel in -- a Hotel California in California and a Hotel
California in Austintown.

The examiner seems to think there could be.  You're
saying, well, he didn't know that I'm opening the hotel in
Austintown.  Well, he certainly knew the applicant was in
Ohio.

So he knew that you're in Ohio.  He made a comparison
of the marks.  He made a comparison of the services.  And
then he counseled and said -- and he obviously in great
detail talked about the services and how they're compared.
And then he analyzed other websites.  He looked at websites
that were related to the goods and service provided here.

1    And he says, "The Internet evidence establishes that the
2    same entity commonly provides the relevant services at issue
3    and markets the services under the same mark, and the
4    relevant services are provided through the same trade
5    channels and used by the same classes of consumers in the
6    same fields of use."

7         He made that finding.  I'm quoting from his letter.

8         And then he counsels as well, as he says here, "Any
9    doubt regarding the likelihood of confusion determination is
10   resolved in favor of the registrant."

11        And he cites to a number of cases, including an Ohio
12   case, interestingly.

13             MR. RUCCI:  Judge, what I see that he was doing
14   there, he was looking at the fact that they don't have a
15   restaurant.  I had a restaurant that I was adding to mine.
16   And he was looking to see is that something to lump up in
17   over the confusion.  And he says I do.  And that's fine.

18        But the fact is, he is not going through a test like
19   we are here, where you have a building that I'm trying to
20   do.  He doesn't have all these other factors.

21        For example, he never analyzes -- and again, I'm not
22   quibbling with it.  He doesn't analyze the supplemental
23   authority.

24        For example, one of the things that's missing in here
25   is in the first registration of Hotel California, the word

1    "California" is excluded.  In the second one the word

2    "hotel" is excluded.  And actually the author tells me to

3    exclude hotel.

4         I mean, these are all things that seem to me that need

5    to be brought up to them in this analysis in looking at all

6    this.

7         And again, he doesn't really go through the

8    eight-factor test.  His likelihood of confusion, as I see

9    it, Judge, respectfully, is with the fact that there is a

10   mark out there and you're similar to them.  But he doesn't

11   go through all these other things that we're doing here in

12   the briefs.

13        THE COURT:  Well, I can go through them and

14   certainly the most important ones, again, I think,

15   unfortunately, weigh in favor of the plaintiff.

16        So I encourage the parties to talk about it, but if I

17   had to make a decision today, I would grant the motion, to

18   be blunt, simply because, again, I have -- I don't want to

19   overstate the importance of it, and I recognize you have six

20   months to provide additional information.  But it's a

21   rather -- I think it's a relatively strongly worded office

22   action.  I think the letter is very strong.  And I'm not so

23   sure whether or not your supplement that indicates, well, I

24   am providing this service in Ohio is going to overcome the

25   action that they have taken or overcome at least in the

1     examiner's view the likelihood of confusion.

2          The name is identical.  It is identical in nature.  It

3     is not limited in any way.  And I think my clerk might have

4     talked to you about Hotel California of Ohio, or something

5     of that nature.  It is specifically limited.  And in fact

6     the examiner talks about, I think he went to -- or

7     references, I should say, I think he went to Travelocity.

8          So, you know, if someone is searching for hotels and

9     goes to Travelocity and goes to Hotel California, are they

10    going to think that this is all part of the same chain?

11    Your hotel?  And the three that are in California?  Or the

12    two?

13                MR. RUCCI:  Judge --

14                THE COURT:  Who is going to know?

15                MR. RUCCI:  Judge, respectfully, the many things

16    that I can do is supplement this.  I could also change it.

17    I could ask to supplemental register.  I could ask to add

18    "of Ohio," and all those things will be explored with them

19    here.

20         But I don't think that, respectfully, this concludes

21    it.  What this says is that my registration on its face

22    value with my limited filings itself conflicts.  And that's

23    easy to see that.

24         But also, though, Judge, for example, he doesn't

25    compare it -- he compares it to the mark, the words, the

1  mark.  But, for example, if you compare their website to our

2  website, you'll see great differences.  So these are things

3  that are also there.  He doesn't have all those other facts

4  that are there before you.

5          THE COURT:  What else could he have?  What else

6  would he have that you would think may cause a change in the

7  opinion?  I hate to speculate, but what else could there be

8  other than I'm going to be doing business in Ohio and not

9  California?

10          MR. RUCCI:  There is quite a few, Judge.

11      The first thing is I would give him the same thing

12  I've given this Court, all the listing of all the Hotel

13  Californias used everywhere.

14          THE COURT:  He didn't attempt to ferret that out?

15          MR. RUCCI:  He doesn't say any of that, Judge.

16  His website that he's searching for, as I see it, he was

17  looking to say that people who have hotels are also

18  connected to restaurants, so therefore it's the same use.

19  That's the way I see it.

20          THE COURT:  He says, "As additional evidence of

21  the related nature providing temporary accommodations such

22  as hotel and restaurant services, the examining attorney

23  attaches the following web pages."  And then he goes on and

24  he attaches web pages that --

25          MR. RUCCI:  Judge.

1           THE COURT:  It appears that he is making that

2      same -- he is making that kind of search.

3           MR. RUCCI:  No, Judge.  Respectfully, as I see

4      it, what he is doing there is he is showing that hotels are

5      connected to restaurants.  He says hotel and restaurant

6      under the same name.

7           What he's doing there, as I see it, is he is saying,

8      okay, you have a restaurant and hotel.  If you connect the

9      two of them under the use factor, the fact that you are

10     using the hotel with a restaurant, it's still the same as

11     the other people who are using just hotel lodging, the two

12     that are registered.  That's what I believe he is doing at

13     that level.

14          He is not looking out there to go search for the fact

15     that the name has been diluted.  Doesn't mention the Eagles.

16     All those other things.

17          So in answer to your question, Judge, the things that

18     I would give him, I would give him the list which is not in

19     here, not a single part it.

20          I would show him that the name has been used quite a

21     bit.

22          I would show him that in 20 years it has not been

23     expanded.

24          I would show him that we have great distances.

25          I would show him that we are geographically in Ohio.

1    Show him that we have different things, that they

2    don't like -- they're not expanding.  I would show him that

3    ten years ago they said they were going to expand.  They

4    haven't done it.  All those things.

5    There is quite a few factors that are there in an

6    effort to do this.  But this is for registration.  This

7    would be registration only.  This is still not the same as

8    here where I have one isolated hotel, no plans for

9    expansion, and do I conflict with somebody that's 2,500

10   miles away?

11   I believe that test isn't in here, Judge,

12   respectfully.  And I get it.  You know --

13   THE COURT:  I think -- I'm sorry, with all due

14   respect, I think he went through the test.  He clearly

15   focused on in many ways, although there were a number of

16   issues, he clearly focused on the likelihood of confusion.

17   That's number one in his summary of issues.

18   I think -- and again, we can debate it back and forth.

19   But I think he went through in a fairly detailed fashion the

20   likelihood of confusion, a comparison of services, and you

21   know, it's going to be a challenge for you.

22   I mean, again, I don't have six months to wait to

23   decide the issue.  And I may have to decide the issue long

24   before you have attempted to persuade the examiner likewise.

25   And so that becomes the challenge.  And I'm not

1    unmindful of where you're at with your business and the

2    signage and things of that nature.

3         But you know, I'm somewhat sympathetic with that.  On

4    the other hand, the plaintiff would be arguing, wait a

5    minute.  You had notice.  They sent you notice.  And they

6    gave you notice that they were going to pursue it.

7         So, you know, how I think about that or how I, you

8    know, factor all that in --

9              MR. RUCCI:  Judge, as I noted in our stuff, we

10   started Hotel California two years ago.  The name was

11   incorporated then.  So it's not like all of the sudden in

12   one week we started doing this.  This process has been going

13   on.  The process has been going on for 12 months.  So we

14   were deep into Hotel California.

15             THE COURT:  I can't get into the debate about

16   what your actions were after you got the cease and desist

17   letter.  But you know, that's, again, something that I'm not

18   going to wade into.

19             MR. RUCCI:  Sure.

20             THE COURT:  But it's going to be a challenge for

21   you, to be blunt.

22             MR. RUCCI:  I get that.  And Judge, if I may on

23   the irreparable harm -- and I appreciate that.  You're the

24   authority.

25        In regards to the irreparable harm, we are not even

1    open at this level.  So it's going to take me time to still

2    finish things that I have to do in regards to the

3    construction.

4         But I think that, if I may, with the Court's

5    deference -- and I appreciate openly you telling me your

6    thoughts -- supplement to show you that this was a similar

7    denial that they received and they were able to overcome it,

8    and perhaps, Judge, if I may, something brief showing you

9    that there is other cases where the denial was not the

10   relevant factor and somebody is still prevailing.

11        Because I don't believe that that's all part of it

12   that's here.  And I think that there is just a lot of facts.

13   He's not comparing the two of them -- he's comparing the

14   marks.  And the marks, the two marks by themselves, I get

15   that.  So I don't get to register.  Let's assume that way,

16   for example, I don't get to register.  But still does that

17   mean that I'm now trampling on them?

18             THE COURT:  I'm sorry?

19             MR. RUCCI:  Does it mean, though, that I'm

20   trampling on their rights at this level?

21             THE COURT:  You may be.  That's what their

22   argument is.  It's possible.  And again, I'm just telling

23   you my thoughts out loud.  Not trying to hide anything.

24             MR. RUCCI:  I appreciate that.

25             THE COURT:  It's a different world.  We are in

1    the Internet world.  And the use of the name "Hotel

2    California" is yes, it's associated with the Eagles and that

3    song.  But when you make the exact same use of the name of

4    those hotels located in California which are, indeed, they

5    have been operating under which they have trademarked, they

6    have the right to the name.  And the fact that you are

7    across the country, in today's world given the broad scope

8    of the Internet, is a lot less important in my view.  It's

9    dramatically less important.

10        If you were located in Utah, I would still -- again,

11   they have the right to the name, if it's identical.  And is

12   there going to be any confusion whatsoever to a consumer?

13   We have to speculate a bit.  I hate to do that.  But I

14   suspect if I go online and punch in Hotel California -- she

15   makes a good point.  If you open a Bellagio in Youngstown,

16   Ohio, or the Wynn in Youngstown, Ohio, or any other name of

17   that nature, do you think the consumer is not automatically

18   going to say, wait a minute, that must be associated with

19   this hotel in Vegas?  It must be a spinoff.

20             MR. RUCCI:  That one I would agree with, Judge.

21             THE COURT:  That's the problem you're going to

22   have.  But I'm not going to decide the issue today.  I'm

23   going to write a written opinion.

24        I strongly encourage you, what you should be doing is

25   you should be negotiating, trying to find a way, see if

1  there isn't a license or some other option available to you.

2      I know from what I've been told through my clerks that

3  the plaintiff is opposed to any use of the name.  But, you

4  know, I've been wrong before.  And obviously if counsel

5  wants to appeal it, who knows what the future holds.

6      So I would strongly encourage some negotiation.

7      We will take the matter under advisement.  I'm sorry.

8  I don't mean to cut you short.  I have a 3:00, and it's now

9  3:20.  I've given the parties a lot of time.  We will issue

10  a written opinion.

11      In the meantime, if you are able to come to some

12  agreement, let us know so we don't have to go through the

13  time that it will take to put together a reasoned opinion.

14      All right.  Thank you very much for your courtesy and

15  your arguments.

16          MR. RUCCI:  Thank you, Your Honor.

17          MS. LUARDE:  Thank you, Your Honor.

18          THE COURT:  You're welcome.

19      (Proceedings concluded at 3:20 p.m.)

20          C E R T I F I C A T E

21    I certify that the forgoing is a correct transcript

22  from the record of proceedings in the above-entitled matter.

23

24          S/Caroline Mahnke         4/3/15

25          Caroline Mahnke, RMR, CRR       Date