UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD A. BUTLER, III, AND OCEAN AVENUE PROPERTIES, LLC, | ) | Case No. 4:14CV2380 |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| vs. | ) | [Resolving Docs. 3; 10; 13; 39 and 41.] |
| HOTEL CALIFORNIA, INC. AND SEBASTIAN RUCCI, | ) | |
| Defendants. | ) | **MEMORANDUM OF OPINION AND ORDER** |

This matter comes before the Court upon the hybrid Motion for a Temporary Restraining Order and Preliminary Injunctive Relief filed by Plaintiffs Richard A. Butler, III and Ocean Avenue Properties, LLC. Defendants Sebastian Rucci and Hotel California, Inc., have opposed Plaintiffs' Motion. A preliminary injunction hearing has been held. For the reasons set forth herein, Plaintiff's request for a preliminary injunction is **GRANTED** .

## I. Facts

This matter first came before the court on the Temporary Restraining Order portion of Plaintiffs' hybrid request for relief. Plaintiffs' request for temporary restraining order was denied. Plaintiff has now supplemented the material in the record and presented relevant testimony. Plaintiffs' additional material and testimony clarifies the relationship between the various entities "Hotel California" or "The Hotel California" within California and Plaintiff, Ocean Avenue Properties, LLC. The facts, as they now appear from the record, relative to

Plaintiffs' request for preliminary injunctive relief, are again largely undisputed, but differ materially from those presented in support of the request for a temporary restraining order.

Plaintiffs, Richard A. Butler and Ocean Avenue Properties, LLC, own and operate "The Hotel California," in Santa Monica, California. When Plaintiff Butler originally acquired the Santa Monica property, which was then operating under a different name, he filed an application with the United States Patent and Trademark Office (PTO) seeking to register "Hotel California" as a service mark for "providing temporary furnished accommodations." (Complaint, para. 13.) The service mark was subsequently included in the Supplemental Register on July 8, 1997. (Doc #1-4.) This mark was not, and has never been, included in the Principal Register, as was represented in the Complaint at Paragraphs 13 & 15, and in Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunctive Relief. However, Plaintiff did later seek, and receive, registration of "The Hotel California" for use with "hotel, motel and furnished lodging services." This second mark was included in the Principal Register on April 6, 2004. (Complaint, para 15.) The original mark for "Hotel California" remains on the Supplemental Register. Plaintiff has continually operated "The Hotel California" in Santa Monica, California. Plaintiffs have continually used and promoted the service mark "The Hotel California," in print and online, in connection with this business.

Although Plaintiffs originally sought to register each mark seperately, they now cite the final office action denying Defendants' attempt to register, which notes "[w]hen comparing similar marks, the Trademark Trial and Appeal Board has found that inclusion of the term 'the' at the beginning of one of the marks will generally not affect or otherwise diminish the overall similarity between the marks . . . the addition of the word 'The' at the beginning of the registered mark does not have any trademark significance." (Supplement to Robert H. Herbeger's

declaration, Exhibit R, pg. 9.) At the time of the hearing on the temporary restraining order portion of Plaintiffs' hybrid motion, Plaintiffs stated that franchise and licensed operations of the brand had begun and identified one other location in California, San Francisco. At that time Plaintiff did not produce any document or material demonstrating a connection with the San Francisco property and did not conclusively identify any hotel other than the Santa Monica location that is owned, run, or licensed by Ocean Avenue Properties, LLC, or Richard A. Butler III.

In support of their request for preliminary injunctive relief, Plaintiffs have now produced two licensing agreements. The first of which, between Plaintiff Richard Butler and Evelyn and Warren Wong, is dated February 24, 2003 and addresses the exclusive use of "Hotel California" by the Wongs with a fifty mile radius of Palo Alto, including the entire city of San Francisco, and the ability to transfer that license with the sale of their property. The second agreement, between "Rick Butler" and "Columbia West Properties, Inc.," is a limited license that allows the licensee to operate a single location, 580 Geary Street, San Francisco, California 94102, under the name "The Hotel California." The second agreement, unlike the first agreement, includes a royalty provision which allows Plaintiff Butler to inspect the financials to verify amounts paid under the agreement. Plaintiffs no longer claim, as was pleaded at Paragraphs 11 and 17, to have franchised their trademark; they instead refer to the licensing agreements as evidence of the control they exercise over their registration. Plaintiffs do continue to state that they may develop a franchise in the future, but concede that Ohio is not included in those plains at present.

Plaintiff Richard Butler testified that he was unaware of other users at the time of his original trademark application, and became aware of the Palo Alto property while his second application was pending. When he learned of the Palo Alto he purchased the right to use the

name from the Wongs for $30,000.00, licensed it back, and supplemented his trademark application with information concerning a common law right to "Hotel California" he now claimed to date from January 1, 1985. By virtue of this agreement Plaintiff Butler claims three separate trademark rights to "The Hotel California" and "Hotel California" – his Principal Registration for "The Hotel California" dating from 2004, the Supplemental Registration for "Hotel California" dating from July 8, 1997, and a common law right to "Hotel California" in the Bay Area, that dates from 1985.

In addition to presenting the licensing agreements that demonstrate actual relationships with the Palo Alto and San Francisco operations, Plaintiffs have presented testimony explaining that the various properties identified by Defendants as operating in California and Nevada are entities whose use of "Hotel California," or variants thereof, predates their 2004 trademark registration. Plaintiff Butler testified that although he was able to negotiate an agreement with the Wongs, he and Ocean Avenue Properties, LLC, elected not to pursue similar arrangements with the other properties he became aware of whose use of the mark predated his 2004 registration. Plaintiffs' testimony acknowledges that such prior users would retain their common law right to use the name. Plaintiff Butler emphasized that the second licensee, the San Francisco property, is the only location that began using the name after his 2004 registration, and this use occurred first when he opened the location as The Hotel California, and continued under license when he sold the property to Columbia West Properties, Inc.. Nothing in the record at this time contradicts the information presented by Plaintiffs.

Defendants Sebastian Rucci and Hotel California, Inc., have developed a hotel and restaurant in Austintown, Ohio, under the names "Hotel California" and "The Fifth Season Restaurant at the Hotel California" (Complaint, para 5 and Plaintiffs' Preliminary Injunction

Hearing Exhibit 21.) Defendant Rucci incorporated "Hotel California, Inc." in July 2012 with the Ohio Secretary of State for the purpose of operating a hotel, restaurant, and conference room in Austintown, OH. Defendants state that they were unaware of The Hotel California in Santa Monica, chose the name due to the Eagles' song, and intended to position the Austintown property to capitalize on the opportunity created by the new Hollywood Racino at Mahoning Valley Race Course in Youngstown, Ohio.

Plaintiffs state that they learned of the proposed Austintown hotel in July 2014 and sent a first cease and desist letter to Defendants on July 14, 2014. Defendants did not respond to this letter or a subsequent letter sent on October 8, 2014. Both letters were sent to the address provided by Defendants for service of process in the business registration filed with the State of Ohio. In September 2014 Defendants sought and received registration of the service mark Hotel California from the State of Ohio. Plaintiffs have filed suit asserting an exclusive right to "The Hotel California" and "Hotel California" for hotel and lodging services nationwide. Plaintiffs allege Defendants have engaged in trademark infringement, counterfeiting, and unfair competition in violation of the Lanham Act as well as violations of the Ohio Deceptive Trade Practices Act. The temporary restraining order portion of Plaintiffs' hybrid request for relief was denied by the Court in its entirety. A hearing has been held on the preliminary injunction portion of the hybrid motion. The proceeding was adjourned after fact testimony to accommodate Defendants' request to depose Plaintiffs' opinion witness prior to his testimony. Testimony from all parties is now complete; the matter is ripe for decision.

## II. Legal Standard

When considering a motion for preliminary injunction, courts must balance: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer

irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 249 (6th Cir.2003). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) (citing *in re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985). A district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue. *Id.;* citing *Mascio v. Public Employees Retirement Sys. of Ohio*, 160 F.3d 310, 312 (6th Cir.1998) (affirming the district court's grant of a preliminary injunction based on the district court's conclusion that the plaintiff had demonstrated a substantial likelihood of success on the merits). It is nevertheless "generally useful for the district court to analyze all four of the preliminary injunction factors." *Certified restoration Dry Cleaning v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (internal citation omitted). A district court's evaluation of the preliminary question of whether a movant is likely to succeed on the merits is a question of law subject to de novo review. *N.A.A.C.P. v. City of Mansfield*, 866 F.2d 162, 169 (6th Cir.1989). The weight a district court gives to each of the four factors and resulting decision to grant or deny preliminary injunctive relief, however, is examined under the abuse of discretion standard. *PACCAR*, 319 F.3d at 249; *N.A.A.C.P.*, 866 F.2d at 166 (noting that a "district judge's weighing and balancing of the equities should be disturbed on appeal only in the rarest of cases") (internal quotation marks and citations omitted). A district court has abused its discretion if it has "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *PACCAR*, 319 F.3d at 249 (internal quotation marks and citation omitted).

**III. Legal Analysis**

**A. Likelihood of Success**

To establish a likelihood of success on the merits of a claim, Plaintiffs must:

> . . . show more than a mere possibility of success. However, it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them for litigation and thus for more deliberate investigation.

*Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir.1997) (internal citations omitted). As Plaintiffs note, to sustain a claim for trademark infringement, they must demonstrate (1) ownership of a valid mark that is entitled to protection under the Lanham Act; and (2) that the Defendants' use of the mark is likely to cause consumer confusion. *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1188-89 (6th Cir. 1997). Although Plaintiffs originally based their infringement claims on the erroneous representation that the Hotel California mark was also included in the principal register, this error has been corrected. Plaintiffs now contend that there is no meaningful difference between the two marks, and, persuasively, the trademark examiner who conducted the final review of Defendant Rucci's trademark application agrees with this contention.

At common law, "ownership of trademark or service mark rights is obtained by actual use." *Id.* at 571-571, citing 2 McCarthy on Trademarks and Unfair Competition § 16.1 (4th Ed. 2000). Further, "[t]he first to use a mark in the sale of goods or services is the 'senior user' of the mark and gains common law rights to the mark in the geographic area in which the mark is used. Ownership rights flow only from prior use-either actual or constructive." *Id*. at 572. The court continues:

> The U.S. Court of Customs and Patent Appeals has explicitly addressed 'the questions as to what circumstances, if any, short of actual use of the trademark, may create rights in a territory . . .' *In re Beatrice Foods Co.*, 57 C.C.PA.1320, 429 F.2d 466, 475 (1970). The court's answer relied on the underlying purpose of

> trademark law to eliminate consumer confusion. The *Beatrice* court explained that, 'where a party has submitted evidence sufficient to prove a strong probability of future expansion of his trade into an area, that area would then become an area of likelihood of confusion if a registration covering it was granted to another party.'

*Id.* at 574. Although trademark ownership rights flow only from prior use, constructive use is sufficient to establish priority; in the "typical case in which a senior user applies for the federal registration, 'constructive use will fix a registrant's nationwide priority rights in a mark from the filing of its application for registration.'" *Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir. 2001) and *U.S. Structures, supra.*

Plaintiffs have now established that the known users of the mark identified by Defendants in opposition to Plaintiffs' request for temporary restraining order are in fact either senior users who retain their common law right to the mark, or licensees. This primary difference between the information presented in support of the request for a temporary restraining order and that produced during the preliminary injunction hearing materially alters the Court's analysis of Plaintiffs likelihood of success and demonstration of the right to a protected mark. Previously, Defendants identified a number of hotels and other entities in California itself, providing some type of temporary accommodation, operating under the name "Hotel California," or a near variant, in the absence of any apparent affiliation with Plaintiffs. Plaintiffs have now demonstrated that other users in California are senior common law users, and/or licensees.

To the extent that Plaintiffs have a protected right to "The Hotel California," Plaintiffs must establish that Defendants' use of "Hotel California" in Ohio would create a likelihood of confusion. *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 1100, 1107 (6th Cir. 1982). The Sixth Circuit has adopted eight factors relevant to the likelihood of confusion determination:

1. Strength of the plaintiff's mark;
2. Relatedness of the goods;
3. Similarity of the marks;
4. Evidence of actual confusion;
5. Marketing channels used;
6. Likely degree of purchaser care;
7. Defendant's intent in selecting the mark; and
8. Likelihood of expansion of the product lines

*Id.* at 648. "These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely. They are also interrelated in effect. Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case." *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). While all of these factors are relevant, actual confusion is "obviously the most probative proof of the likelihood of confusion." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997).

When evaluating Plaintiff's request for temporary restraining order, this Court's analysis was driven in part by the facial lack of strength of Plaintiffs' mark in California, evidenced by multiple, apparently unaffiliated, properties in California and Nevada. Plaintiffs' primary arguments in support of their hybrid motion, that the "The Hotel California" mark is strong due to the duration of registration and the success of the Eagles' song by the same name, do not address the inquiry prescribed by the Sixth Circuit when evaluating the strength of a mark:

> The strength of a mark is a determination of the mark's distinctiveness and degree of recognition in the marketplace. "A mark is strong if it is highly distinctive, i.e., if the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of wide and intensive advertisement, or because of a combination of both."

*Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). Nevertheless, the information now contained in the record does reflect a degree of use and control over the mark that was not previously evident. As this Court previously indicated, the

actual strength of the mark cannot and should not be definitively determined at this stage in the matter. However, the testimony presented and material produced at the preliminary injunction hearing does demonstrate steps Plaintiffs have taken to develop and control the mark and their exclusive right to and use of it after 2004. Plaintiffs' actual use and licensing of the mark coupled with the absence of successful challenge to their registration since 2004 suggest a degree of strength. *Daddy's Junky Music Stores, Inc., v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 282 (1997) ("an incontestable mark 'is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark").

The final office action denying Defendants' application offers additional insight into the remaining *Frisch* factors. The Court notes that the trademark office emphasizes an objective comparison of marks *sui generis*, rather than the type of contextual analysis prescribed by the Sixth Circuit because "each case presents its own complex set of circumstances." *Daddy's Junky Music*, 280. A decision of the trademark office is not conclusive. *Grand Lodge, Fraternal Order of Police v. Labor Council Michigan Fraternal Order of Police, Inc.*, 38 F.3d 1215, 3 "the Office's action in granting the registration does not end our inquiry." Bearing in mind that the office action is not conclusive, this Court acknowledges that likelihood of confusion is an important component of the Office's decision, and, in this instance, the driving element of the decision. The Office's evaluation is therefore useful to the Court at this stage in the matter for the purposes of a preliminary injunction. The Trademark Office refused Defendant Rucci's registration because his application sought registration of an objectively similar mark. The Final Office Action includes an analysis of the relatedness of the goods and services, concluding that because both entities are offering temporary accommodations, they are "considered related for purposes of the likelihood of confusion analysis;" the examiner notes "the goods and/or services

of the parties need not be identical or even competitive to find a likelihood of confusion." (Exhibit R, 10.) This analysis is based "on the description of the goods and/or services stated in the application and registration at issue, not on extrinsic evidence of actual use" however, in the context of the presumed strength of Plaintiffs' mark evidenced in part by apparent control over the mark dating from 2004 and the objective relatedness of the goods, it is persuasive on the issue of confusion at this stage. (Exhibit R, 10.)

The totality of the material presented by Plaintiffs in support of their motion for preliminary injunction demonstrates a likelihood of success on the merits. This question drives the Court's analysis of the need for a preliminary injunction, but the Court will briefly address the other factors as well.

**B. Irreparable harm, harm to others, the public interest**

The Court is sensitive to Plaintiffs' concern that Defendant Rucci's personal and business history could reflect negatively on the good will and reputation associated with the Santa Monica Property. The Court has taken steps to preserve this reputational interest, as indicated by ordering a disclaimer in conjunction with the denial of Plaintiffs' request for temporary restraining order. The Trademark Office Final Action further emphasizes the reality of this concern: "respective goods and/or services need only be 'related in some manner and/or if circumstances surrounding their marketing [are] such that they could give rise to the mistaken belief that [they] emanate from the same source.'" (Exhibit R, 10.) The Court finds at this stage that the likelihood of confusion between the marks is such that there is a public interest in protecting Plaintiffs' exclusive right to the mark. The Court recognizes and has considered the fact that Defendants' will incur some cost in complying with this decision, but the possibility of expense alone does not outweigh the public interest in preventing confusion as to the origin of services.

**Conclusion**

For the foregoing reasons Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunctive Relief (Doc. # 3) is GRANTED IN PART. Defendants' Motion to Dismiss for Failure to Register to Transact Business (Doc #10) is DENIED AS MOOT, due to Plaintiffs' Notice of Active Status (Doc # 13). Defendants' Motion to Continue the Preliminary Injunction Hearing (Doc. # 39) is DENIED AS MOOT. Plaintiffs' Motion to Supplement Robert J. Herbeger's Declaration (Doc. # 41) is GRANTED Defendants are ordered to cease all use of "Hotel California" and/or "The Hotel California" in all print, internet-based, and other advertising. Defendants have fourteen days, until June 10, 2015, to comply with this order.

IT IS SO ORDERED.

*/s/ John R. Adams*
John R. Adams
U.S. District Court Judge

Dated: May 26, 2015